# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

———————————————————— )
)
PHOENIX LIFE INSURANCE COMPANY )
and GENERAL & COLOGNE LIFE RE )
OF AMERICA, )          CIVIL ACTION NO.
)          3:03-CV-907 (WWE)
Plaintiffs, )
)
v. )
)
AON RE, INC., )
)
Defendant. )
————————————————————) NOVEMBER 3, 2003


## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT AON RE'S MOTION FOR
## A STAY PENDING ARBITRATION


Attorneys for the Plaintiffs

EDWARDS & ANGELL, LLP
90 State House Square, 9th Floor
Hartford, CT  06103
(860) 525-5065

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS ................................................................................................ 2

PROCEDURAL HISTORY............................................................................................... 5

LEGAL ARGUMENT........................................................................................................ 7

I.  AON'S MOTION IS PREMATURE ........................................................................... 7

II. AON IS NOT ENTITLED TO A STAY PENDING THE OUTCOME OF AN
ARBITRATION TO WHICH IT IS NOT A PARTY ................................................... 7

        A.     Public Policy Favoring Arbitrability of Disputes is Inapplicable ................... 8

        B.     Aon is Not Entitled to a Mandatory Stay Under the Federal Arbitration Act
              10.............................................................................................................. 12

        C.     Aon has Not Met its Heavy Burden for a Discretionary Stay ...................... 12

              1.     Aon Has Not Met Its Burden of Demonstrating That Any Common
                    Issues Will Be Finally Determined in the Arbitration or that the
                    Management Agreement Encompasses Claims in this Litigation........ 14
              2.     Aon Has Not Agreed to Be Bound By the Arbitration and will Seek
                    "Two Bites at the Apple" .................................................................. 16
              3.     Aon Has Not Met Its Burden of Demonstrating that Plaintiffs Will
                    Suffer No Undue Hardship ................................................................ 17

      D.  The Doctrine of Equitable Estoppel Prevents Aon from Seeking the
          Protection of a Stay Pending Arbitration Due to Aon's Conduct in
          Connection with the Pool Arbitration Concerning the December Whole
          Account ........................................................................................... 18

CONCLUSION ............................................................................................................... 20

HFD_126205_2

# TABLE OF AUTHORITIES

**Pages)**

Am. Shipping Line, Inc. v. Massan Shipping Indus., Inc., 855 F. Supp. 499 (S.D.N.Y. 1995)……………………………………………………………………...16-17

Arrowsmith v. United Press Int'l., 320 F.2d 219 (2d Cir. 1963)……………………………………7

Citrus Mktg. Bd. of Israel v. J. Lauritzen A/S, 943 F.2d 220 (2d Cir. 1991)……………………...10

City of Bismark v. Toltz, King, Duvall, Anderson & Assoc., Inc., 767 F.2d 429 (8th Cir.1985)……………………………………………………………..……………..11

Contracting Northwest, Inc. v. City of Fredricksburg, 713 F.2d 382 (8th Cir. 1983)…………..…11

Cosmotek Mumessillik Ve Ticaret Ltd. Sirkketi v. Cosmotek USA, 942 F. Supp. 757 (D.Conn. 1996)……………………………………………………………………17

Cost Bros., Inc. v. Travelers Indem. Co., 760 F.2d 58 (3d Cir. 1985)……………………..…..9

Cragwood Managers, L.L.C. v. Reliance Insurance Company, 132 F.Supp.2d 285 (S.D.N.Y. 2001)………………………………………………………………18

Crawford v. West Jersey Health Sys., 847 F. Supp. 1232 (D.N.J. 1994)…………………………11

CTI-Container Leasing Corp. v. Uiterwyk Corp., 685 F.2d 1284 (11th Cir. 1982)………………11

Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213 (1985)…………………………………………9

Doctor's Assocs. v. Hollingsworth, 949 F. Supp. 77 (D.Conn. 1996)………………………..…14

First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995)……………………………………9

Harvey v. Joyce, 199 F.3d 790 (5th Cir. 2000)……………………………………………………11

Hill v. G.E. Power Sys., Inc., 282 F.3d 343 (5th Cir. 2002)………………………………………11

Landis v. North American Co., 299 U.S. 248 (1936)…………………………………………...12

Meadows Indem. Co. Ltd. v. Baccala & Shoop Ins. Servs., Inc., 760 F. Supp. 1036 (E.D.N.Y. 1991)………………………………………………………………12

Mehler v. The Terminix Int'l Co., 305 F.3d 44 (2d Cir. 2000)……………………………………10

Metro. World Tanker Corp. v. P.N. Pertambangan Minkajdangas Bumi Nasional
(P.M. Pertamina), 427 F.Supp.2d (S.D.N.Y. 1975)………………………………………….…...9

Mutual Benefit Life Ins. Co. v. Zimmerman, 783 F. Supp. 853 (D.N.J. 1992)……………....14-16

Netherlandse Erts-Tankersmaatchappij, N.V. v. Isbrandtsen Co. Inc.,
339 F.2d 440 (2d Cir. 1964)……………………………………………………………………11-13

Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395 (1967)…………………………...10

RCM Techs., Inc. v. Constr. Servs. Assocs., 149 F.Supp.2d 109 (D.N.J. 2001)…………….…..14

Sargent v. Rent-A-Car Corp., 1996 WL 413725 (S.D.N.Y. 1996)…………………………………7

Sec. Ins. Co. of Hartford v. Trustmark Ins. Co., No. CIV.3:01CV2198,
2003 WL 22299691 (D.Conn. Aug. 9, 2003)……………………………………………….…...13

Sierra Rutile, Ltd. v. Katz, 937 F.2d 743 (2d Cir. 1991)………………………………………12, 16

Simitar Entertainment, Inc. v. Silva Entertainment, Inc., 44 F.Supp.2d 986 (D.Minn. 1999)……..11

Stratford v. Int'l Assn. of Firefighters, AFL-CIO, Local 998, 248 Conn. 108,
728 A.2d (1999)…………………………………………………………………………………..9

Worldcrisa Corp. v. Armstrong, 129 F.3d 71 (2d Cir. 1997)…………………………………………12

HFD_126205_2

## PRELIMINARY STATEMENT

Plaintiffs, Phoenix Life Insurance Company ("Phoenix") and General & Cologne Life Re of America ("Cologne") (collectively, "Plaintiffs"), by their attorneys, Edwards & Angell, LLP, hereby submit this memorandum of law in opposition to the motion to stay pending arbitration ("Motion") and accompanying memorandum of law filed by defendant Aon Re, Inc. ("Aon").

In an effort to further delay facing accountability for its wrongful conduct, Aon requests a stay of this action pending the outcome of an arbitration that does not concern it. Aon's Motion, however, is premature. Both parties agree that Connecticut is not the proper forum for this action. Plaintiffs have moved to transfer this action to New Jersey to be consolidated with a related action pending in that District. Aon has moved to transfer this action to the Northern District of Illinois where no other cases are pending. Aon has submitted an identical motion to stay in the related action that is pending in New Jersey. This Court should transfer this action to New Jersey and let that Court determine whether a stay is proper. Any other result is a waste of judicial resources and poses a threat of inconsistent rulings.

Aon contends that a stay of this action would "[preserve] judicial resources." As described below, Aon's contention is wrong. Aon is not a party to the arbitration provision under which the arbitration was commenced. Aon has not agreed to arbitrate the claims in this action or to be bound by any award resulting from the arbitration. If Aon were truly concerned with conserving judicial resources, it would agree to be bound by the outcome of the arbitration. Aon, however, requests a stay as a delay tactic, or an attempt to get "two bites at the apple."

The arbitration expressly concerns claims against Unicover Managers, Inc. ("Unicover") related to Unicover's management of the Unicover Occupational Accident Reinsurance Pool (the "Pool"). By contrast, this action concerns Aon's violation of duties arising from its agreement to

1

serve as the Pool's retrocessional broker.[1]  The panel in the arbitration derives its authority solely from the arbitration provision in the management agreement between Unicover and members of the Pool.  The panel has no authority to make a determination concerning whether Aon violated its duties as retrocessional broker – duties which arose under a distinct contract.  Aon's liability to Plaintiffs is entirely independent of Unicover's liability for its mismanagement of the Pool.

As a result, a stay of this action would not alleviate the need to litigate the claims in this action – it would only delay Plaintiffs from having their day in court.  Indeed, Aon will certainly litigate these claims and deny any preclusive effect of an unfavorable ruling in the arbitration. Similarly, an award in favor of Unicover in the arbitration would not preclude Plaintiffs from litigating claims against Aon as they concern independent duties outside the scope of the panel's authority.

Additionally, Aon has failed to satisfy its heavy burden of demonstrating the necessity for a stay.  Further, Plaintiffs will suffer from the delay attendant to the stay.  For these reasons, Plaintiffs respectfully request that this proceeding move forward, and the Court deny Aon's motion for a stay.

## STATEMENT OF FACTS

This is an action for damages arising out of a pooling arrangement for the reinsurance of accident and health portions of workers' compensation insurance policies by life and health insurers, otherwise known as workers' compensation carve-out reinsurance.  Compl. ¶ 1.  In 1995, Unicover, along with Nicholson Leslie Group, Aon's London Market reinsurance brokerage affiliate, recruited life insurers to participate in the Pool, a risk-bearing reinsurance facility formed

---

[1] Plaintiffs' memorandum of law frequently refers to reinsurance terms such as retrocessional broker.  For the Court's convenience, a description of relevant terms and a background of the reinsurance industry is included in the Complaint (¶¶ 1-11).  For example, the Complaint provides that "a [retrocessional] broker is often retained by the reinsured or retrocedent to arrange for reinsurance for all or part of the reinsured's book of business."  Id. ¶ 5.

HFD_126205_2

to provide workers' compensation carve-out reinsurance.  Id. ¶ 17.  Phoenix joined the Pool at its inception (id. ¶ 18) and Cologne became a Pool member in 1998 (collectively, with the other Pool members, the "Pool members").  Id.

Pool members entered into the Occupational Accident Reinsurance Pool Management Agreement (the "Management Agreement") with Unicover.  Id. ¶ 33; Ex. A.  By the terms of the Management Agreement, Unicover became the administrator and Managing General Underwriter ("MGU") for the Pool members.  Id.  The Management Agreement governed the administration of the Pool and provided Unicover with exclusive authority to bind reinsurance risks on behalf of the Pool.  Id.  Pursuant to the Management Agreement, the Pool members and Unicover agreed to arbitrate disputes concerning the management of the Pool.

Under the Management Agreement, Unicover earned a management fee of 7.5% of the gross premium ceded by an insurer to the Pool members.  Compl. ¶ 26.  Thus, Unicover would receive more money as more premium was accepted on behalf of the Pool members.  Id.

Originally, Aon was retained by the Pool members, along with Rattner Mackenzie Limited ("Rattner"), to serve as co-retrocessional brokers for the Pool.  Id. ¶ 29.  As a result, Aon was responsible for securing retrocessional protection – reinsurance for the business accepted on behalf of the Pool.  Id. ¶ 30.  In this capacity, Aon had a continuing duty to provide the Pool's retrocessionaires with all material information concerning the business being ceded by the Pool. Id. ¶ 31.  Aon was also obligated to act as a conduit between Unicover, the Pool and the retrocessionaires; transmitting material information between the parties.  Id.  In exchange for its role as co-retrocessional broker, Aon received a brokerage commission based on a percentage of the premium for the retroceded business.  Id. ¶ 30.

3

Unicover entered into a joint venture with Aon and Rattner to assist in developing Pool business (the "Joint Venture"). <u>Id.</u> ¶¶ 23, 25-27. Pursuant to the Joint Venture, Aon received a percentage of Unicover's "volume based" management fee. <u>Id.</u> The Pool members were unaware of Aon's status as joint venture partner in the Pool. <u>Id.</u> ¶ 27.

After achieving conservative growth for the Pool during the first two years, Unicover, Aon and Rattner sought to expand. A key element of the expansion plan was securing whole account retrocessional protection.[2] <u>Id.</u> ¶¶ 34-36. In the spring of 1997, Unicover and Aon secured whole account protection from Centaur Underwriting Management, Inc. ("Centaur") for a one year term, which was later replaced with three-year whole account agreement incepting December 1, 1997 (the "December Whole Account"). <u>Id.</u> ¶ 36. Centaur was the managing general underwriter for Sun Life Assurance Company of Canada ("Sun") and Phoenix. <u>Id.</u> ¶ 47. John Cackett was a principal of Centaur and managed the company and the December Whole Account from Centaur's Bermuda office. <u>Id.</u> ¶ 33. Cologne signed onto the December Whole Account through its agent CRF Underwriting Agency, Ltd., which was based in London, England. <u>Id.</u> ¶ 38.

With the December Whole Account in place, Unicover deliberately engaged in an underwriting practice of providing reinsurance at rates that were certain to generate gross losses for the Pool members. Compl. ¶ 43. Unicover based this practice on its ability to pass the losses on to the Pool's unsuspecting retrocessionaires. <u>Id.</u> Unicover jeopardized the Pool's retrocessional protection by underwriting an extraordinary volume of underpriced business, and leveraging the retrocessional protection to provide a profit to the Pool. <u>Id.</u> ¶¶ 43, 49.

Aon assisted Unicover by intentionally misrepresenting or failing to disclose material information to the Pool members and the Pool's retrocessionaires. Compl. ¶¶ 51-54. For example,

---

[2] A whole account retrocessional treaty obligates a reinsured/retrocedent to cede, and a reinsurer/retrocessionaire to accept, all risks that fall within the scope of the treaty. A treaty reinsurer/retrocessionaire is not afforded the opportunity to underwrite each ceded risk on its own merits.

HFD_126205_2

when Sun learned of the scale of the volume of premium being retroceded from the Pool (which was still significantly understated), it told Aon that it would terminate its participation as retrocessionaire unless Unicover stopped underwriting and found alternative retrocessional protection.  Id. ¶ 53.  Aon withheld this information from the Pool members and encouraged Unicover to write more business than ever before.  Id.

## PROCEDURAL HISTORY

In a letter dated January 25, 1999, Sun advised Unicover and the Pool members that it was terminating its obligations under the December Whole Account going forward and reserving its rights to rescind.  Id. ¶ 55.  The Sun termination letter preceded termination letters from Phoenix and Cologne.  Id. ¶ 56.

Retrocessionaires Sun and Phoenix demanded arbitration against Unicover and the Pool members in July 1999 and September 1999, respectively, seeking to rescind the Pool's whole account retrocession agreements (the "Whole Account Arbitration").  Id. ¶ 56.  Cologne joined Sun and Phoenix (collectively, the "Retrocessionaires") as petitioners in the Whole Account Arbitration.  Id.

During discovery in the Whole Account Arbitration, both petitioners and respondents made efforts to obtain documents from Aon.  Aon refused to cooperate and, in October of 1999, Sun and Phoenix were forced to commence legal proceedings against Aon in the Illinois state court.  Aon fought to stonewall discovery, but lost and was sanctioned by the court for its conduct.  Ex. B; Ex. C.  Petitioners and respondents, however, were not as fortunate in obtaining the testimony of key witness.

The Whole Account Arbitration hearing began on July 8, 2002 and lasted through August 7, 2002.  On October 8, 2002, the panel issued a written unanimous Final Award.  Compl. ¶ 57.  In

the Award, the panel ruled that the Retrocessionaires were not liable for losses from any business bound or renewed by Unicover on behalf of the Pool after August 31, 1998.  Id.

On May 22, 2003, Plaintiffs filed this action alleging that Aon breached its contracts to serve as retrocessional broker between the Pool and the Retrocessionaires and as joint venture partner with Unicover.  Compl. ¶¶ 51-55, Count I, II, III.  Plaintiffs also filed suit in the United States District Court for the District of New Jersey alleging tort claims against Aon, among other claims, against Rattner, Unicover and its shareholders.

On August 4, 2003, Plaintiffs filed a motion pursuant to 28 U.S.C. § 1404(a) to transfer this action to the District of New Jersey.  Ex. D; Ex. E.  Aon has opposed the motion to transfer to New Jersey and filed a cross motion requesting transfer to the United States District Court for the Northern District of Illinois.  Ex. F.

Fellow Pool member ReliaStar filed a similar action in New Jersey state court against Aon, Rattner, Unicover and various individual defendants alleging, among other claims, violations of the Racketeer Influenced and Corrupt Organizations Act and fraudulent concealment.  Fellow Pool member Lincoln filed a similar action against Aon and Rattner in this Court and in New Jersey. By Order dated October 27, 2003, Plaintiffs' New Jersey action and Lincoln's New Jersey action were consolidated.  Ex. G.  Although ReliaStar and Lincoln were also Pool members, the circumstances surrounding Plaintiffs' suits are unique in that neither ReliaStar nor Lincoln were Pool members *and* Retrocessionaires.

Contemporaneously, Phoenix and Cologne demanded arbitration against Unicover pursuant to the arbitration clause contained in the Management Agreement (the "Arbitration").  See Ex. H; Ex. I.  In their demands, Phoenix and Cologne seek redress for Unicover's numerous violations of duties arising from its role as MGU of the Pool as provided in the Management Agreement.  Id.

HFD_126205_2

The Arbitration is in its infancy.  Unicover and the Pool members have selected their party-appointed arbitrators.  The parties to the arbitration, however, have not selected an umpire or agreed upon a date for an organizational meeting or position statement deadline.

<u>**ARGUMENT**</u>

## I.    **AON'S MOTION IS PREMATURE**

Plaintiffs and Aon agree that this action should not remain in Connecticut.  In their motion to transfer, Plaintiffs assert that the convenience of all parties and the interests of justice would be better served if this action were transferred to New Jersey and consolidated with the related action pending in that District.  <u>See</u> <u>Exs. D, E</u>  Aon has moved to transfer this action to the Northern District of Illinois where no other disputes are currently pending.  <u>See</u> <u>Ex. F.</u>  As both parties agree that Connecticut is not the proper forum, the Court should resolve the venue motions first and allow the transferee court to resolve whether this action should be stayed.  <u>See</u>, <u>e.g.</u>, <u>Arrowsmith v. United Press Int'l.</u>, 320 F.2d 219, 221 (2d Cir. 1963);  <u>Sargent v. Rent-A-Car Corp.</u>, 1996 WL 413725, at *2 (S.D.N.Y. 1996).[3]  Aon submitted an identical motion to stay in the consolidated action pending in New Jersey.  <u>Ex. J.</u>  There is no reason why two courts should rule on the exact same issue, risking inconsistent rulings where transfer and consolidation are proper.

## II.    **AON IS NOT ENTITLED TO A STAY PENDING THE OUTCOME OF AN ARBITRATION TO WHICH IT IS NOT A PARTY**

Aon's request for a stay should be denied because it has failed to satisfy its heavy burden of demonstrating a necessity for a stay and that Plaintiffs will not suffer undue hardship as a result of the stay.  Instead, in support of its Motion, Aon relies solely on the mischaracterization of Plaintiffs' claims and the conclusory contention that the Arbitration "will likely dispose of all or most of the issues presented here."  Aon Mem. at 2.

---

[3] A copy of all unreported decisions are attached as <u>Exhibit 1</u>.

While some of the facts in this litigation and the Arbitration overlap, the legal issues and parties are distinct. Although the Arbitration concerns the management of the Pool, it is <u>solely</u> between Unicover and the Pool members (including Plaintiffs) concerning Unicover's conduct in violation of obligations expressly set forth in the Management Agreement. By contrast, the claims in this action concern Aon's breach of duties it owed Plaintiffs as a retrocessional broker for the Pool and duties arising from the joint venture/fraudulent scheme entered into with Rattner and Unicover, which is wholly outside the scope of the Management Agreement.

Contrary to Aon's contention, a stay of this action will not avoid duplicative litigation or inconsistent results. Aon is not a party to the Management Agreement. It has not consented to participate in the Arbitration or to be bound by any final award that results from the Arbitration. Aon will certainly continue to litigate the claims in this action if the Arbitration results in a final award imposing liability on Unicover. In addition, staying the litigation pending an outcome of the Arbitration proceedings will cause substantial prejudice to Plaintiffs, who will once again be denied discovery from Aon and be forced to incur substantial delay in obtaining relief.

Aon should not be allowed to escape judgment for its wrongdoing due to the mere existence of an arbitration that does not concern it. The proper forum for adjudication of Plaintiffs' claims against Aon is this Court; the proper time for adjudication of Plaintiffs' claims is now.

### A.    <u>Public Policy Favoring Arbitrability of Disputes is Inapplicable</u>

Aon contends that "[i]ssuance of a stay in this case would serve several compelling interests: preservation of judicial resources; promotion of the public policy regarding arbitrations; and the avoidance of conflicting outcomes between arbitrations and court actions." Aon Mem. at 2. As demonstrated below, Aon is wrong.

HFD_126205_2

The central purpose behind the Federal Arbitration Act is to ensure judicial enforcement of privately-made agreements to arbitrate. See Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219 (1985). A second purpose is to conserve judicial resources and alleviate duplicative litigation. Id. However, when the two purposes conflict, the Supreme Court has instructed that courts should rigorously enforce the contractual terms of the agreements to arbitrate, even if the result is "piecemeal" litigation. Id. at 221; Metro. World Tanker Corp. v. P.N. Pertambangan Minjakdangas Bumi Nasional (P.M. Pertamina), 427 F. Supp.2d (S.D.N.Y. 1975).

In this action, neither of the two public policy grounds for issuing a stay is present. First, Aon and the Pool members have not agreed to arbitrate their disputes. "[A]rbitration is a creature of contract." Stratford v. Int'l. Assn. of Firefighters, AFL-CIO, Local 998, 248 Conn. 108, 121, 728 A.2d 1063 (1999). In cases where one of the parties to a dispute is not a party to an arbitration clause, the public policy ground invoked by the courts in resolving this issue is not that arbitration is favored for the expeditious resolution of disputes, but that commercial agreements to arbitrate are enforced according to their terms, like any other contract. First Options of Chicago, Inc. v Kaplan, 514 U.S. 938 (1995) (citations omitted). See also Cost Bros., Inc. v. Travelers Indem. Co., 760 F.2d 58, 63 (3d Cir. 1985) ("in the absence of some contractual agreement between Travelers and Cost Brothers to submit disputes to arbitration, it need not be decided whether the public policy favoring arbitration takes precedence… Thus, the policy of encouraging resolution of disputes by means of binding arbitration clearly has no relevance in this case"). Here, there simply is no agreement to arbitrate. Moreover, Aon does not wish to arbitrate; it merely requests that the Court provide it with the benefit of a stay – a benefit for which it did not bargain.

Second, a stay will not alleviate duplicative litigation or inconsistent results as the claims at issue are distinct from those asserted in the Arbitration. As described below, an award establishing

that Unicover did or did not breach the Management Agreement would have no impact on whether Aon violated its duties as a retrocessional broker.  Moreover, as Aon has not agreed to be bound by the Arbitration, Aon will certainly continue to fight the claims in this action if the panel in the Arbitration imposes liability on Unicover.  Thus, there will be multiple litigations regardless of the outcome of the Arbitration.  This action should not be stayed on public policy grounds as the parties have not agreed to arbitrate their disputes and there will be no conservation of judicial resources.

**B.**    **Aon is Not Entitled to a Mandatory Stay Under the Federal Arbitration Act**

Aon acknowledges that in considering a motion to stay under the Federal Arbitration Act ("FAA"), a court must determine whether or not a valid agreement to arbitrate exists between the parties, and whether the specific dispute falls within the scope of the agreement to arbitrate.  Aon Mem. at 11-12 (citing Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985); Prima Paint Corp v. Flood & Conklin Mfg. Co., 388 U.S. 395, 400 (1967); Mehler v. The Terminix Int'l Co., 305 F.3d 44, 47 (2d Cir. 2000)).  Aon  further concedes that the controlling law in the Second Circuit – which is directly against it – is that the mandatory stay provision of the FAA does not apply to non-signatories to a contract containing an arbitration provision, (Aon Mem. at. 12 (citing Worldcrisa Corp. v/ Armstrong, 129 F.3d 71, 74 (2d Cir. 1997); see also Citrus Mktg. Bd. of Israel v. J. Lauritzen A/S, 943 F.2d 220, 224-25 (2d Cir. 1991)), and that "[h]ere, Aon . . . is not a party to the Management Agreement, so it did not consent to arbitrate any dispute with [Plaintiffs], or Unicover".  Aon Mem. at 12.

Nevertheless, Aon suggests that this Court ignore the controlling Second Circuit authority and the facts of this case in favor of "developing authority" from other jurisdictions. Aon  Mem. at 12, 13.  Aon's tactic is puzzling, especially considering the distinguishable case law it refers to as

"developing authority."  For example, Aon relies on, among other non-binding authority, the Eighth Circuit decision in <u>Contracting Northwest, Inc. v. City of Fredricksburg</u>, 713 F.2d 382 (8th Cir. 1983).  The basis for the stay in that case was the fact that the third-party litigation "involve[d] common questions of fact . . . within the scope of the arbitration agreement."  <u>Id.</u> at 387.[4]  Unlike <u>Contracting Northwest, Inc.</u>, Plaintiffs' claims against Aon concerning its role as retrocessional broker arise under a distinct agreement not governed by the Management Agreement.  Similarly, the Management Agreement is completely silent concerning a joint venture and fraudulent scheme entered into between Unicover and Aon and Rattner.  Clearly, Plaintiffs' claims are outside the scope of the Management Agreement.

Aon string-cites a panoply of case law for its proposition that as a non-signatory to the Management Agreement it is entitled to a stay.  None of these cases, however, are relevant to this dispute.  For example, in <u>City of Bismarck v. Toltz, King, Duvall, Anderson & Assoc., Inc.</u>, 767 F.2d 429 (8th Cir. 1985), the plaintiff instituted suit against the general contractor, the general contractor's engineer, and the insurer, based on the single allegation that the general contractor had failed to complete a construction project.  There, any liability of the engineer and insurer derived from the potential liability of the general contractor, a party to the arbitration, and a stay was held warranted.[5]

---

[4]  The sole Second Circuit case cited by Aon, <u>Netherlandse Erts-Tankersmaatchappij, N.V. v. Isbrandtsen Co., Inc.</u>, 339 F.2d 440 (2d Cir. 1964), is irrelevant.  There, the Second Circuit stayed litigation against the guarantor pending arbitration against the direct obligor because the guarantor could not be held liable <u>unless</u> the party to the arbitration – the obligor – was held liable.  The Second Circuit further cautioned that a stay should be granted only in "rare circumstances." <u>Id.</u> at 442.

[5]  The remaining cases cited by Aon in support of its Motion either <u>denied</u> the movant's request to stay pending arbitration or, in a similar vein to Aon's other cited "authority," granted the stay based on either the derivative nature of the claims in the two proceedings or the clearly inseparable nature of the allegations in the arbitration and litigation proceedings.  <u>See</u> <u>CTI-Container Leasing Corp. v. Uiterwyk Corp.</u>, 685 F.2d 1284 (11th Cir. 1982) (vacating a stay order of the claims pending arbitration against a third-party); <u>Simitar Entertainment, Inc. v. Silva Entertainment, Inc.</u>, 44 F.Supp.2d 986 (D. Minn. 1999) (denying request to stay non-contractual claims beyond the arbitration provision); <u>Hill v. G.E. Power Sys., Inc.</u>, 282 F.3d 343, 347 (5th Cir. 2002) (finding stay warranted only where allegations in both proceedings are "inherently inseparable."); <u>Harvey v. Joyce</u>, 199 F.3d 790, 795 (5th Cir. 2000) (stay appropriate because the non-signatory's "potential liability derive[d] from [the signatory's] conduct."); <u>Crawford v. West Jersey</u>

11

By contrast, Plaintiffs' claims against Aon are not derivative of their claims against Unicover and, in fact, do not arise under the same agreement. The Complaint alleges that Aon took advantage of its agency relationship with the Pool for its own personal gain (Joint Venture and fraudulent scheme) and withheld material information from both the Pool members and the Retrocessionaires in violation of its obligations as retrocessional broker. Compl. ¶¶ 52-54.

### C.    Aon has Not Met its Heavy Burden for a Discretionary Stay

Although a court has the power to issue a discretionary stay on motion of the non-signatory, the "movant bears a heavy burden of showing necessity for a stay." Sierra Rutile, Ltd. v. Katz, 937 F.2d 743, 750 (2d Cir. 1991); see also Worldcrisa Corp. v. Armstrong, 129 F.3d 71, 74 (2d Cir. 1997). As the Court explained in Landis v. North American Co., 299 U.S. 248 (1936), "the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." 299 U.S. at 255. Subsequent to Landis, courts have imposed additional requirements, including that the moving party: (i) demonstrate that "resolution of issues in the arbitration may be determinative of issues in the case" (Sierra Rutile, Ltd., 937 F.2d at 750); (ii) be bound by the result of the arbitration, as otherwise it would unfairly obtain "two bites at the apple" (id.); and (iii) "demonstrate to the satisfaction of the court that they have not taken nor will take any steps to hamper the progress of the arbitration proceeding, that the arbitration may be expected to conclude within a reasonable time, and that such delay as may occur will not work undue hardship." Nederlandse Erts-Tankersmaatschappij v. Isbrandtsen Co. Inc., 339 F.2d 440, 442 (2d Cir. 1964).

---

Health Sys., 847 F. Supp. 1232, 1243 (D.N.J. 1994) (granting stay only after expressly concluding that the claims in the two proceedings "involve[d] many of the same factual and legal issues" as well as similar parties); Meadows Indem. Co. Ltd. v. Baccala & Shoop Ins. Servs., Inc., 760 F. Supp. 1036, 1045 (E.D.N.Y. 1991) (granting stay of litigation pending arbitration based on similarity of issues and resulting "judicial economy, avoidance of confusion and possible inconsistent results").

In the closely analogous case of <u>Security Insurance Company of Hartford v. Trustmark Insurance Company</u>, No. CIV. 3:01CV2198, 2003 WL 22299691 (D. Conn. Aug. 9, 2003), the third-party defendant moved to stay the litigation pending arbitration between the third-party defendant and the plaintiff pursuant to an arbitration clause in the parties' contract.  In <u>Trustmark</u>, the plaintiff instituted suit against the defendant involving "the propriety of defendant's cancellation of the Retrocession Agreement. . ."  <u>Id.</u> at *2.  Thereafter, the defendant brought a third-party complaint against the third-party defendant based upon "the material misrepresentations and omissions made by [the third-party defendant] in its attempt to transfer to its unsuspecting reinsurers tens of millions of dollars in losses stemming from its under-performing workers' compensation business."  <u>Id.</u> at *1.  In denying the third-party defendant's motion to stay, the court noted that even assuming "the issues of fraud and negligent misrepresentation resolved the issues in the third party complaint, it is . . . not apparent that the majority of issues in the original complaint, which involve the propriety of defendant's cancellation of the Retrocession Agreement . . . would be resolved thereby."  <u>Id.</u> at *2.  Accordingly, the court held that the third-party defendant had not met its burden of establishing "a clear case of hardship or inequity in going forward."  <u>Id.</u> at *3.

Aon's Motion is conspicuously silent as to its heavy burden regarding a discretionary stay. Aon has not, and cannot, satisfy its burden, because: (i) the Arbitration will not be determinative of issues in this case; (ii) Aon has not agreed to be bound by any ruling in the Arbitration and will certainly seek to take "two bites at the apple;" (iii) Plaintiffs will incur significant hardship as a result of a stay as Aon will undoubtedly continue its obstructionist conduct with regard to discovery and thereby impede the progress of the Arbitration resulting in a burdensome delay; (iv) the delay is significant in that the Arbitration is in its initial stages and, based on the previous

13

Whole Account Arbitration, may take years to complete; and (v) Plaintiffs will also be burdened by a stay because Unicover is insolvent and there is serious doubt that it will be able to satisfy any award.

> **1.    Aon Has Not Met Its Burden of Demonstrating that Any Common Issues Will Be Finally Determined in the Arbitration or that the Management Agreement Encompasses Claims in this Litigation**

A court's decision to stay litigation in favor of arbitration is based on whether the arbitrable claims raised in the litigation overshadow the non-arbitrable claims. Where non-arbitrable claims dominate a dispute, a stay of litigation should not be granted. Mutual Benefit Life Ins. Co. v. Zimmerman, 783 F. Supp. 853 (D.N.J. 1992) (finding that a stay of litigation was not warranted since all but one claim at issue involved factual allegations outside the scope of the management agreement).[6]

Aon's motion is based entirely on the contention that Plaintiffs' claims "are indisputably derived from the Management Agreement" and therefore the Arbitration "will likely dispose of all or most of the issues present here." Aon Mem. at 2, 8, 9. Aon's contention constitutes a gross mischaracterization of Plaintiffs' claims and is clearly intended to mislead the Court.

First, Aon's contention that "the thrust of [Plaintiffs'] complaint is that Aon Re failed to fulfill duties imposed by the management agreement" is contradicted by the Complaint. Aon Mem. at 9. The "thrust" of Plaintiffs' claims concern Aon's role as retrocessional broker. Compl. ¶¶ 29-31, 52-54. These claims arise from a distinct agreement and are wholly irrelevant to the claims asserted in the Arbitration. The Management Agreement bears no relationship to Aon's role as retrocessional broker for the Pool. Aon was an agent of the Pool with specific obligations to: (i)

---

[6] The Zimmerman opinion was later withdrawn by the Court on September 24, 1996 because of a settlement between the parties. Since that time, however, it has been positively cited by the District of New Jersey as well as other jurisdictions. See, e.g., RCM Techs., Inc. v. Constr. Servs. Assocs., 149 F. Supp.2d 109 (D.N.J. 2001); Wilson v. Waverlee Homes, 954 F. Supp. 1530 (M.D.Ala. 1997); Doctor's Assocs. v. Hollingsworth, 949 F. Supp. 77 (D. Conn. 1996).

secure retrocessional protection for the Pool; (ii) provide the Pool members with all material information concerning the retrocessional protection to the Pool members; and (iii) provide the Retrocessionaires with material information concerning the business being retroceded by the Pool. Compl. ¶¶ 29-31.  As alleged in the Complaint, Aon took advantage of its agency relationship with the Pool for its own personal gain (Joint Venture and fraudulent scheme) and withheld material information from both the Pool members and the Retrocessionaires in violation of its obligations as retrocessional broker.  Id. ¶¶ 36, 43, 45, 49, 51-54; Counts One-Two.

A final award in the Arbitration that Unicover breached the Management Agreement would not affect whether Aon breached its contractual duty owed to Plaintiffs as retrocessional broker. Similarly, an award in favor of Unicover would not have a preclusive effect because Aon owed independent duties as co-retrocessional broker to act in the best interest of Plaintiffs.  For example, an unlikely finding in the arbitration that Unicover did nothing wrong in writing large amounts of grossly underpriced business to the Pool would not determine that Aon's act of withholding from the Retrocessionaires the true amount of business being retroceded from the Pool was proper conduct by an intermediary within the reinsurance industry.

Second, Plaintiffs' claims arising out of the Joint Venture do not concern the Management Agreement.  The focus of these claims is not on Aon's participation in the management of the Pool. Rather, the focus is on Aon's intent and conduct in furtherance of a conspiracy between and among Unicover, Rattner and Aon to commit a fraud upon the Pool members, which would remain notwithstanding the Management Agreement.  See Zimmerman, 783 F. Supp. at 876.

Aon's references to the Management Agreement are misleading.   The Management Agreement is strictly limited to the rights and obligations of the parties to that agreement.  See Ex. A at 2, 5-6.  Sections 3, 6, 8 and 9, referenced by Aon, explicitly concern obligations that Unicover

15

owed to the Pool members.  Id.  There is no mention of Aon, or any other third party.  Id.  This fact is even more telling considering that the fee-sharing agreement between Aon, Unicover, and then Rattner – which is the basis for this action – had been ongoing for two-and-a-half years before the final Management Agreement was circulated for signatures, yet this arrangement was not formalized in the Agreement.  Indeed, the Management Agreement is written so that, by its own express terms, it only includes the rights and obligations of Unicover and the Pool members.  Id.

There is simply no authority supporting the conclusion that this action should be stayed pending the resolution of independent claims against a third party in an arbitration to which Aon is not a party.

> **2.    Aon has Not Agreed to Be Bound By the Arbitration and Will Seek "Two Bites at the Apple"**

For this action to be stayed, Aon must be bound by the result of the Arbitration or else it would unfairly obtain "two bites at the apple."  See Sierra Rutile, Ltd., 937 F.2d at 750; see also Am. Shipping Line, Inc. v. Massan Shipping Indus, Inc., 855 F. Supp. 499, 502 (S.D.N.Y. 1995) (denying stay when it was "far from certain the arbitration proceedings will have any preclusive effect" on the non-arbitrable claims, and the moving parties did not agree to be bound by the results of the arbitration) (citations omitted); Sierra Rutile, Ltd. v. Katz, 937 F.2d at 750 (2d Cir. 1991) (finding "[i]t makes no sense to stay a proceeding pending the end of the arbitration when any outcomes of the arbitration with which the moving defendants disagree will have to be relitigated in federal courts anyway").

Similarly, imposing a stay will not avoid duplicative litigation or have preclusive effect on Plaintiffs' claims against Aon.  As stated above, Aon can be held liable to Plaintiffs regardless of whether Unicover is also held liable.  Aon has not agreed to arbitrate disputes with the Pool members or to be bound by any decision reached in the Arbitration.  Aon will undoubtedly litigate

16

the claims asserted in this action regardless of the outcome in the Arbitration. A stay of this litigation would serve no purpose other than to allow Aon to continue to avoid responsibility for its misconduct as a secret joint venturer with Unicover, and for its errors and omissions as Pool broker and retrocessional broker for the Pool.

### 3.    Aon Has Not Met Its Burden of Demonstrating that Plaintiffs Will Suffer No Undue Hardship

Additionally, beyond the failure to establish a commonality of issues or that all issues will be finally resolved in the Arbitration, Aon is not entitled to a stay because it has not, and cannot, establish that Plaintiffs will face no undue hardship as a result of a stay. See Cosmotek Mumessillik Ve Ticaret Ltd. Sirkketi v. Cosmotek USA, 942 F. Supp. 757, 760 (D. Conn. 1996) ("a stay may not be granted, despite the existence of compelling reasons to grant it, if [movants] have not shown that plaintiff would not undergo undue hardship from the resultant delay"); Am. Shipping Line, Inc. v. Massan Shipping Indus., Inc., 885 F. Supp. at 503 (same).

It would be highly prejudicial to Plaintiffs if the Court were to stay Plaintiffs' litigation against Aon. As described in greater detail below (Section D), Aon has steadfastly refused to participate in any fact-finding discovery concerning the Pool. Indeed, Aon has gone to great lengths to keep information concerning its role with regard to the Pool secret, including ignoring a subpoena for the testimony of its lead Pool broker, Roger Smith, and refusing an Illinois Circuit Court Judge's Order to produce Pool documents, which ultimately resulted in sanctions imposed to Aon. See Ex. B; Ex. C. Due to its role as retrocessional broker for the Pool and joint venture partner with Unicover, Aon is in possession of critically important information concerning the Pool. If Aon is allowed to stay this action, Plaintiffs will be unable to discover that information as Aon will undoubtedly refuse once again to cooperate in any discovery related to the Arbitration, thereby hindering the Arbitration.

HFD_126205_2

In addition, Aon has not, and cannot, demonstrate that the imposition of a stay would not cause a significant and burdensome delay. As Aon has previously admitted, the actions concerning Unicover and the Pool are complex and time-consuming. Ex. K. p. 12-13. Indeed, "the [Whole Account Arbitration] took approximately three years from filing to completion…" Id. There is no reason to think that this Arbitration will be any less prolonged. As a result, Plaintiffs will certainly be burdened by the delay in achieving justice for Aon's wrongful conduct.

Finally, Unicover is effectively insolvent and its ability to satisfy any award in the Arbitration is doubtful. In Cragwood Managers, L.L.C. v. Reliance Insurance Company, 132 F. Supp.2d 285 (S.D.N.Y. 2001), the court affirmed an interim arbitration award requiring Unicover to post a bond in the amount of $4 million, which Unicover claimed was nearly all of its remaining assets. 132 F.Supp.2d at 287-88. It would be highly prejudicial to require Plaintiffs to resolve their claims against an insolvent, judgment proof corporation while being prevented from obtaining compensation from a solvent wrongdoer.

**D.    The Doctrine of Equitable Estoppel Prevents Aon from Seeking the Protection of a Stay Pending Arbitration due to Aon's Conduct in Connection with the Whole Account Arbitration**

Aon's conduct to date in relation to disputes regarding the Pool precludes it from obtaining the benefit of a stay of this litigation pursuant to the Management Agreement. Aon has made every effort to avoid participating in the ultimate resolution of disputes concerning the Pool. As described in greater detail below, Aon's obstructionist conduct in connection with the Whole Account Arbitration was particularly harmful. As a result, Aon should be precluded from now seeking the protection of an arbitration between Unicover and the Pool members – the exact event it worked so hard to avoid for the past four years.

With respect to the Whole Account Arbitration, Aon resisted the discovery efforts of the parties to that arbitration to such an extent that it took a court order, an appellate court ruling, and an order of sanctions for failing to comply with the original court order to finally induce it to produce relevant documents.  See Ex. B; Ex. C.  Aon reaped millions of dollars in fees and commissions from its relationship with the Pool.  Compl. ¶ 28.  Nevertheless, Aon adamantly refused to turn over documents relating to its position as retrocessional broker, forcing Phoenix and Sun to incur significant legal fees and costs in order to litigate to obtain such documents.  The Illinois Circuit Court Judge stated:

> From the moment this matter was filed, Sun Life was entitled to ask and the only thing that Aon had to do was produce, period, end of discussion.  There was no confusion.  Ex. C at. 53 ln. 10-13.

> Almost from the moment that this matter began and came to the Court's attention it was clear to the Court that [Aon] was engaging in every perceived procedural ploy that it thought it could avail itself of, totally in an effort to frustrate and make difficult the acquisition of materials to which the plaintiff had a clear, absolute right. Id. at. 53-54 ln. 23-24; 1-5.

The imposition of sanctions and a public reprimand was not enough to dissuade Aon from its gamesmanship.  Aside from the issue of document production, Aon refused to provide any witnesses for deposition in the Whole Account Arbitration and, upon information and belief, encouraged its lead broker, Roger Smith, a primary tortfeasor throughout the life of the Pool and by any standard an important witness, to evade service of process so that he would not have to provide deposition testimony or testify at the hearing.[7]

One can assume, based on Aon's track record of no cooperation and repeated stonewalling in the resolution of Unicover-based disputes to date, that Aon will take advantage of the fact that it is not a signatory to the Management Agreement to once again avoid providing witnesses and

---

[7] It is worth noting here that Mr. Smith has continued to evade service of process and has refused to testify in yet another arbitration currently pending in which Aon and he played a significant role as a retrocessional broker.

appearing at the pending arbitration that it now seeks the Court's permission to hide behind. This is another compelling reason for this Court not to stay this litigation. A stay would only further delay the discovery of the facts behind Aon's misconduct in connection with its roles as retrocessional broker and secret joint venturer with Unicover. Aon is not entitled to a stay of this litigation under any legal or equitable theory.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs request that the Court deny Aon's Motion to Stay Proceedings.

**PHOENIX LIFE INSURANCE COMPANY and GENERAL & COLOGNE LIFE RE OF AMERICA**

By:_____
        Janet M. Helmke (Fed. Bar No. ct-09851)
        Robert D. Laurie (Fed. Bar No. ct-24978)
        Edwards & Angell, LLP
        90 State House Square
        Hartford, CT 06103-3702
        Telephone: (860) 525-5065
        Facsimile: (860) 527-4198

## <u>CERTIFICATION OF SERVICE</u>

     This is to certify that on the 3rd day of November, 2003, a copy of the foregoing Brief in Opposition to Aon's Motion to Stay Pending Arbitration and accompanying documents has been served via federal express to:

Timothy A. Diemand, Esq.
Wiggin & Dana LLP
One Century Tower
P.O. Box 1832
New Haven, CT 06508-1832
(203) 498-4400

 

                                     _____

                                         Janet M. Helmke