BY ORDER OF THE COURT

| | |
|---|---|
| RELIASTAR LIFE INSURANCE COMPANY, | :    SUPERIOR COURT OF NEW JERSEY<br>:    CHANCERY DIVISION - FAMILY PART<br>     MIDDLESEX COUNTY |

RELIASTAR LIFE INSURANCE
COMPANY,
         :    SUPERIOR COURT OF NEW JERSEY
         :    CHANCERY DIVISION - FAMILY PART
              MIDDLESEX COUNTY
         :
     *Plaintiff*
         :    Docket No. L-3916-03
     v,
         :    **FILED**
JOHN E. PALLAT, III, THOMAS J.
DUNN, JR., ROBERT J.      :    ORDER    **NOV 0 7 2003**
WOJTOWICZ, ROGER SMITH,
CHRIS MAYS, AON RE, INC., and    :    **JUDGE ANN McCORMICK**
RATTNER MACKENZIEL LIMITED

     *Defendant*

       This matter having come before the Court on (1) the motion of Rattner Mackenzie Limited ("Rattner") to dismiss for lack of personal jurisdiction, (2) the motions of Rattner, Aon Re, Inc. ("Aon") and Roger Smith ("Smith") to dismiss on the ground of forum non conveniens, and (3) the motions of Rattner, Aon, Smith, John E. Pallet, III ("Pallet"), Thomas J. Dunn, Jr. ("Dunn") and Robert J. Wojtowicz ("Wojtowicz") for a stay of the proceedings pending the conclusion of arbitration proceedings; and the Court having considered the papers filed in support of and in opposition to the motions well as oral argument on October 24, 2003; and, the Court having set forth its findings of fact and conclusions of law as to the motions on the record on November 7, 2003; and, for the reasons set forth on the record on November 7, 2003; and, for good cause shown;

IT IS ON THIS 7TH DAY OF NOVEMBER, 2003 ORDERED as follows:

1. Rattner's motion to dismiss for lack of personal jurisdiction is denied.

2. The motions to dismiss on the ground of forum non conveniens filed by Rattner, Aon and Smith are denied.

3. The motions for a stay pending arbitration filed by Rattner, Aon, Smith, Pallet, Dunn and Wojtowicz are granted subject to the following terms:

   a. In the event that a motion to stay pending arbitration is denied in any of the cases filed by other pool members, the Court will reconsider its decision upon an appropriate application; and

   b. In the event that there is an unreasonable delay in the commencement of the arbitration hearing or if any of the parties hereto present obstacles to the completion of reasonable discovery in connection with the arbitration proceeding, the Court will reconsider its decision upon an appropriate application.

   c. The Court will continue to monitor the progress of the arbitration proceeding and periodic status conferences will be held to effectuate such monitoring. The first status conference is scheduled for May 7, 2004 at 1:30 p.m.

ANN G. McCORMICK, J.S.C.

# EXHIBIT 2

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION, CIVIL PART
MIDDLESEX COUNTY
DOCKET NO. MID-L-3916-03
A.D.#_____

1

2  RELIASTAR LIFE INSURANCE CO., )
                                )
3                   Plaintiff,   )
                                )
4         Vs.                    )        TRANSCRIPT OF THE
                                )        DECISION OF THE
5                                )    HONORABLE ANN G. MCCORMICK
                                )
6  AON RE, INC., ET AL.,         )
                                )
7                   Defendants.  )
                                )
8

9                         Place:  Middlesex County Courthouse
                                  1 JFK Square
10                                New Brunswick, New Jersey 08903

11                        Date:   November 7, 2003

12
   BEFORE:
13
      HONORABLE ANN G. MCCORMICK, J.S.C.
14

15  TRANSCRIPT ORDERED BY:

16    CRAIG L. STEINFELD, ESQ. (Riker Danzig Scherer Hyland &
      Dicker)
17
   APPEARANCES:
18
19    THERESA L. MOORE, ESQ. (McCarter & English)
      Attorney for Plaintiff, ReliaStar Life Insurance Co.
20
      CRAIG L. STEINFELD, ESQ. (Riker Danzig Scherer Hyland &
21    Perretti)
      Attorney for Defendants, John E. Pallat and Robert
22    J. Wojtowicz
23
      JAMES S. RICHTER, ESQ. (Winston & Strawn)
24    Attorney for Defendants, Aon Re, Inc. and Roger Smith

25

1   APPEARANCES (Continued):

2

3     JOANNA P. PIOREK, ESQ. (Wilson, Elser, Moskowitz, Edelman &
      Dicker)

4     Attorney for Defendant, Radnor & McKenzie, Ltd.

5

6                              Transcriber, Gail M. Tornetta
                               G&L TRANSCRIPTION OF NJ
7                              40 Evans Place
                               Pompton Plains, New Jersey 07444

8                              Sound Recorded
                               Recording Operator,
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

I N D E X                3

|  |  | Page |
|---|---|---|
| 1 |  |  |
| 2 |  |  |
| 3 | APPEARANCES: | 4 |
| 4 |  |  |
| 5 | THE COURT |  |
| 6 | Decision: | 4 |

Appearances/The Court - Decision                4

1        THE COURT:  ReliaStar Life Insurance Company
2   vs. Pallat and others, N -- I'm sorry, Middlesex L-
3   3916-03.  The purpose of today is for me just to read
4   my opinion into the record, but just for the purpose of
5   the record could you put your appearance on the record?
6        MS. MOORE:  Theresa Moore, McCarter and
7   English for the plaintiff.
8        MS. PIOREK:  Joanna Piorek from Wilson,
9   Elser, Moskowitz, Edelman & Dicker for defendant,
10   Radnor McKenzie, Ltd.
11        MR. STEINFELD:  Craig Steinfeld from Riker,
12   Danzig, Scherer, Hyland and Perretti for defendants
13   John Pallat and Robert Wojtowicz.
14        MR. RICHTER:  James Richter of Winston and
15   Strawn on behalf of the defendant, Aon Re and Roger
16   Smith.
17        THE COURT:  Thank you.  This case arises out
18   of the business of reinsurance of worker's compensation
19   risks.  The business relationships between the parties
20   involved in this reinsurance business has spawned
21   numerous lawsuits and arbitrations of which this
22   lawsuit is only one.  In probably what is a gross
23   simplification of the factual background of the
24   reinsurance that it at the heart of this case and other
25   proceedings, this Court will attempt to describe the

1  parties and the general nature of the business
2  relationships.
3        Worker's compensation insurance covers a
4  variety of discreet risks such as accidents, health and
5  employer liability.  Certain of these risks can be
6  carved out of the worker's compensation insurance and
7  reinsured.  In other words, the worker's compensation
8  carrier carves out certain of the risks it has written
9  and for a premium it pays to another insurer, called
10 the reinsurer, obtains insurance covering the carved
11 out risks.  If there is a claim on that particular risk
12 the reinsurer is obligated to pay the claim.  The
13 reinsurer typical seeks to spread the risk that it has
14 reinsured and seeks its own reinsurance which is called
15 retro-sessional coverage.  The reinsurer then pays a
16 premium to the retro-sessional insurer who then is
17 obligated to pay the claim if one is made.
18        The plaintiff herein, ReliaStar, was one of
19 five insurers that formed a pool to collectively
20 reinsure carved out worker's compensation risks.  The
21 pool had a one year term commencing on March 1, 1998
22 and ending on February 28th, 1999.  There had been an
23 earlier three year term pool that included some of the
24 same reinsurers, but ReliaStar was not a member of the
25 earlier pool.  The pool hired Unicover (phonetic), now

1   Craigwood (phonetic) as its managing general agent in

2   connection with the pool accepting risks and then

3   seeking retro-sessional coverage of those risks.

4          Defendants herein, Pallat, Dunne (phonetic)

5   and Wojtowicz were associated with Unicover.

6   Defendants Aon Re and Radnor McKenzie were reinsurance

7   brokers who assisted Unicover in procuring retro-

8   sessional coverage for the risks reinsured by the pool.

9   Defendant Mayes (phonetic), who since has been

10  dismissed from the case was associated with Radnor and

11  defendant Smith was associated with Aon Re.

12          In early 1999 the insurance companies proving

13  the retro-sessional coverage sought to be relieved of

14  their obligations.  The dispute was arbitrated because

15  there was an agreement between the pool and those

16  companies that included an arbitration clause.  The

17  arbitration proceeding was commenced in the summer of

18  1999.  On October 8, 2002 the arbitrators rendered a

19  decision relieving the companies providing the retro-

20  sessional coverage of obligations that arose after

21  August 31, 1998.

22          ReliaStar filed this action on May 22, 2003.

23  The complaint in essence alleges that Unicover and the

24  defendants engaged in a massive fraud in connection

25  with their duties to the pool.  Not suing Unicover due

The Court - Decision                    7

1    to its arbitration agreement with Unicover, ReliaStar

2    sued certain Unicover principals as well as the brokers

3    and its employees alleging that they participated in a

4    massive fraud whereby they gained millions of dollars

5    in commissions and fees that caused ReliaStar to lose

6    millions of dollars.

7         In response to the filing of the complaint

8    the defendants filed various preliminary motions.  The

9    motions now being addressed are as follows:

10        One, a motion to dismiss for lack of personal

11   jurisdiction filed by Radnor McKenzie.

12        Two, motions to dismiss on the grounds of

13   forum non conveniens filed by Radnor McKenzie, Aon Re

14   and Smith.

15        Three, motion to stay these proceedings

16   pending arbitration filed by Radnor McKenzie, Aon Re

17   and Smith, Pallat and Wojtowicz and Dunne.

18        This Court will address each motion periodium

19   (phonetic).

20        One, Radnor's motion to dismiss for personal

21   jurisdiction.  There are many facts regarding the

22   personal jurisdiction motion that are not in dispute.

23        One, ReliaStar is a Minnesota corporation

24   with its principal place of business in Minnesota.

25   Radnor is an English broker with its prin -- principal

The Court - Decision                  8

1   place of business in England.  Its employee, Mayes, who

2   has been dismissed from this litigation resides in

3   England.

4          Three, Aon is an out of State corporation

5   with its principal place of business in States other

6   than New Jersey.  It's employee, Smith, resides in a

7   State other than New Jersey.

8          Four, all of the other five members of the

9   pool are out of State corporations with their principal

10  places of business in States other than New Jersey.

11         All -- five, all of the companies providing

12  retro-sessional coverage are out of State corporations

13  with principal places of business in States other than

14  New Jersey.

15         Six, the management agreement between the

16  pool members and Unicover was expressly governed by the

17  laws of Illinois.

18         Seven, neither Radnor nor Aon Re were parties

19  to the management agreement.

20         Eight, Unicover was a New Jersey corporation

21  with its principal place of business in New Jersey.  It

22  was not licensed as a reinsurance intermediary in New

23  Jersey, however.  It was so licensed in Illinois.

24         Nine, Pallat and Wojtowicz reside in New

25  Jersey, Dunne resides in Illinois.

The Court - Decision                          9

1          Ten, Unicover first used Nicholson Leslie,
2    Limited, another English broker as a reinsurance
3    broker.  Mayes left the employment of Nicholson and
4    joined Radnor on June 30, 1997.  Sometime that summer
5    Unicover business was partially transferred from
6    Niclauson (phonetic) -- Nicholson later known as Aon to
7    Radnor.  Radnor and Aon then became co-brokers.
8          Eleven, the managing general agents for the
9    companies providing the retro-sessional coverage were
10   located either in Bermuda or London.
11         Twelve, at oral argument it was estimated
12   that approximately six percent of the underlying
13   reinsured worker's compensation policies were written
14   in New Jersey.  Net -- more of the underlying worker's
15   compensation policies were written in only three other
16   States.
17         Based on these facts ReliaStar is not
18   asserting general jurisdiction over Radnor, rather it
19   is alleging that this Court may assert specific
20   jurisdiction over Radnor.
21         The parties vigorously dispute the extent and
22   nature of the involvement of Unicover's New Jersey
23   office in the pool's reinsurance transaction.  Radnor
24   characterizes Unicover's New Jersey office simply as a
25   back office providing ministerial bookkeeping and

1  accounting services.  ReliaStar char -- characterizes
2  the New Jersey office as the hub of the fraudulent
3  scheme.  The dispute centers on the participation and
4  involvement of two of Unicover's principals, Pallat and
5  Dunne in the running of and decision making regarding
6  the pool's business.  There is no dispute that Dunne
7  worked out of the Illinois office and that Pallat
8  worked out of the New Jersey office.
9           Radnor concedes as it must that Illinois
10  could exercise personal jurisdiction over it.  Radnor
11  even admits that if Dunne had moved to and worked out
12  of New Jersey at/or around the time that ReliaStar
13  joined the pool even if Unicover's reg -- license
14  registration remained in Illinois, New Jersey would
15  have specific jurisdiction over it.  Dunne did not move
16  to work out of New Jersey, however, so the factual
17  dispute centers around Pallat, who concededly lived in
18  and worked out of New Jersey.
19           Radnor tries to minimize Pallat's involvement
20  while at the same time admitting the increasing
21  involvement of Pallat and the New Jersey office in the
22  spring of 1998.  Radnor says that its contact with
23  Dunne -- I'm sorry, Radnor says that its contact was
24  Dunne and that any contact that it had with Pallat was
25  sporadic and incidental.  Even Radnor admits, however,

The Court - Decision                    11

1    that in/or about May 1998 Pallat took a more active

2    role in the pool's operations from the New Jersey

3    office and that the New Jersey office through Pallat or

4    others was being copied on Radnor's correspondence to

5    Illinois.

6         In the same breath Radnor argues that

7    Illinois was always the center of Unicover's operations

8    and that it never intended to do business in New

9    Jersey.

10        The documents and deposition excerpts

11   submitted by ReliaStar show that Pallat's involvement

12   from New Jersey was anything but de minimis by the

13   spring of 1998.  This time period is critical because

14   ReliaStar did not join the pool until March 1, 1998.

15   Based on the documents and deposition excerpts relied

16   upon by ReliaStar it appears that during this time

17   period due to the illness of his daughter, Dunne was

18   phasing out of the Unicover business.  As he was

19   phasing out, Pallat in New Jersey was becoming an

20   increasingly visible presence.  Radnor was sending

21   correspondence to both Dunne and Pallat and the

22   correspondence involved more than ministerial issues.

23   Pallat further was taking a more active role in the

24   pool business, attending more meetings, making more

25   decisions and generally being more involved.  In fact,

The Court - Decision                              12

1   ReliaStar alleges that it was Pallat -- I'm sorry, that
2   it was Pallat who was the mastermind of the alleged
3   fraud and that the fraudulent scheme was conceived and
4   implemented through Unicover and Pallat in New Jersey.
5           Radnor may not have intended to do business
6   in New Jersey and in fact may have not -- may not have
7   wanted to do Jer -- business in New Jersey, but the
8   fact is that Radnor did do business in New Jersey as
9   Pallat and Unicover's New Jersey office became more and
10  more involved in the decision making role.  It may be
11  that Pallat and Unicover's New Jersey office was not
12  sufficiently involved in the reinsurance business to
13  assert jurisdiction over Radnor at the inception of the
14  relationship, but it is disingenuous for Radnor to deny
15  the New Jersey con -- connection as some time during
16  the first half of 1998.
17          New Jersey allows the exercise of personal
18  jurisdiction over out of State residents to the
19  outermost limits allowed by the United States
20  Constitution.  To exercise jurisdiction over an out of
21  State resident the defendant must have had sufficient
22  minimum contacts with the State so as not to offend the
23  traditional notions of fair play and substantial
24  justice.  Jurisdiction can be general or specific.  If
25  general, the defendant's contacts with the State must