1. be continuous and substantial. If specific, the cause
2. of action must arise out of the defendant's contacts
3. with the State. See Severinson vs. Wagner University
4. (phonetic), 338 N.J. Super. 42 at pages 46 through 47,
5. Appellate Division 2001; certification denied 170 N.J.
6. 205, 2001. The focus of the specific jurisdiction
7. inquiry is on, "the relationship among the defendant,
8. the forum and the litigation." And that's from
9. Schnafer -- Shaffer vs. Heitner (phonetic), 433 U.S.
10. 186 at page 203, 1977. The contacts must have resulted
11. from defendant's purposeful availment of the forum and
12. not the uni -- unilateral conduct of the plaintiff.
13. See Labelle vs. Everglades Marina, Inc., 115 N.J. 317
14. at page 323, 1989.
15. Because ReliaStar is asserting specific
16. jurisdiction it must show that its cause of action
17. arose out of Radnor's contacts with the State and that
18. Radnor had sufficient minimum contacts with New Jersey
19. so as not to offend the notions of fair play and
20. substantial justice. When personal jurisdiction is
21. challenged the burden is on the plaintiff to establish
22. a prima facie case of personal jurisdiction. Once the
23. plaintiff establishes such a prima facie case the
24. defendant has the burden of presenting compelling
25. circumstances that would render the exercise of

1   jurisdiction unreasonable.  See <u>Wurcella NSD North</u>
2   <u>America, Inc. vs. Hill</u> (phonetic), 269 -- second 547 at
3   page 560, District of New Jersey 2003.
4            In this case ReliaStar clearly has
5   established a prima facie case of jurisdiction.  It has
6   shown that Radnor's characterization of Unicover's New
7   Jersey office to be a gross understatement.  Certainly
8   during the beginning of 1998 Pallat's involvement in
9   the decision making -- decision making regarding the
10  pool business is more clearly seen.  Decisions were
11  being made, if not in New Jersey, at least jointly in
12  New Jersey and Illinois with more and more of the
13  decisions being made by Pallat in New Jersey.  Based on
14  emails to Pallat in New Jersey Radnor obviously knew of
15  that connection.  It is clear that by some time during
16  the first half of 1998 Pallat in New Jersey became the
17  primary decision maker and that Radnor was conducting
18  business with Unicover through Unicover's New Jersey
19  office.
20           Once ReliaStar has established a prima facie
21  case of personal jurisdiction it is Radnor's burden to
22  present compelling circumstances that would make the
23  exercise of personal jurisdiction unreasonable.  Radnor
24  has not presented any such circumstances.  At oral
25  argument the only fact alleged to be compelling was

```
 1  that Illinois law may apply.  That certainly is not a
 2  compelling circumstance.
 3          Accordingly, this Court finds that it may
 4  exercise personal jurisdiction over Radnor.
 5          Because the Court finds that it may exercise
 6  personal jurisdiction over Radnor, under the principles
 7  of specific jurisdiction it is not necessary to address
 8  plaintiff's argument that this Court can assert effects
 9  jurisdiction over Radnor pursuant to the principles of
10  Calder vs. Jones (phonetic), 465 US 783, 1984.
11          For the purposes of completeness and any
12  appeal, however, this Court rejects plaintiff's
13  arguments that Calder personal jurisdiction is
14  appropriately exercised over Radnor.  Calder effects
15  jurisdiction merely requires a finding that the
16  tortious conduct was expressly aimed at the forum and
17  that the effect of the harm was felt by the plaintiff
18  in the forum.  See, I-M-O Industries, Inc. vs. Heckert
19  (phonetic), 155 F Third 254 at page 261, Third Circuit
20  1998.  Plaintiff does not allege that ReliaStar
21  suffered harm in New Jersey or that the tortious
22  conduct was expressly aimed at New Jersey.  Rather, it
23  argues that the Calder test includes situations where
24  the effect of the harm is felt in the State.
25          Plaintiff elsewhere argues that the alleged
```

1  fraud had an impact on worker's compensation insurance
2  throughout the United States. To accept plaintiff's
3  argument would result in Radnor being subject to Calder
4  personal jurisdiction in all 50 States. This Court
5  rejects this argument and finds that Calder effects
6  jurisdiction is limited to situations where the
7  intentional tort is expressly aimed at the forum and
8  the impact of the intentional tort is felt the
9  plaintiff in the forum.
10              Two, motion to dismiss based on forum non
11 conveniens filed by Radnor, Aon Re and Smith. The
12 doctrine of forum non conveniens is an equitable one
13 whereby the Court must determine whether continuing the
14 case in the forum selected by plaintiff would be so
15 inappropriate that it could be considered vexatious.
16 See B-O-C Group, Inc. vs. Chevron Chemical Co., 359
17 N.J. Super 135 one -- at pages 143 to 44, Appellate
18 Division 2003. Plaintiff's choice of forum will not be
19 disturbed unless defendant can demonstrate real
20 hardship or other compelling circumstances. Also see
21 the D-O-C case at page 144. Determining whether
22 defendant has met its burden entails an analysis of
23 public and private interest factors as annunciated by
24 the United States Supreme Court in Gulf Oil Corp. vs.
25 Gilbert, 330 US 501, 1947 and adopted by the Supreme

Court of New Jersey. See <u>Kirsky vs. Nissan Motor Corp.</u> (phonetic), 164 N.J. 159 at pages 165 through 66, 2000.

The public interest factors are -- and this is a quote:

One, the administrative difficulties which follow from having litigation pile up in congested centers rather than being handled at its origin.

Two, the imposition of jury duty on members of a community having no relation to the litigation.

Three, the local interest in the subject matter such that affected members of the community may wish to view the trial.

And four, the local interest in having localized controversies decided at home.

That's a quote from <u>Gulf Oil Corp. vs. Gilbert</u>, 330 US at page 508 through 09.

The private interest factors are -- and again, this is a quote:

The relative ease of access to sources of proof, the availability of compulsory process for attendance of unwilling witnesses and the costs of obtaining the attendance of witnesses. Three, whether a view of the premises is appropriate to the action and four, all other practical problems that make trial of the case easy, expeditious and inexpensive, including

The Court - Decision                                   18

1  the enforceability of the ultimate judgment. And
2  that's a quote again from Gulf Oil Corp. vs. Gilbert at
3  page 508 to 09.
4          In addition to these public interest factors
5  Courts in New Jersey also take into consideration one,
6  whether the Court is comfortable with the law that
7  governs the action and two, the avoidance of conflict
8  of law issues. See First England Funding, LLC. vs.
9  Aetna Life Insurance and Annuity Company, 347 N.J.
10 Super. 443 at page 447, Appellate Division 2002,
11 certification denied 174 N.J. 43, 2002.
12         At oral argument the parties conceded that
13 there were no compelling private interest factors that
14 would satisfy the forum non conveniens criteria.
15 Rather, the defendants are relying on the public
16 interest factors. Ultimately the parties had to
17 concede that the ability to compel the attendance of
18 witnesses and the costs thereof was not going to be
19 significantly different whether the case was in
20 Illinois, arbitration, Minnesota or New Jersey. After
21 the distillation of their arguments it appears that the
22 only factor upon which defendants rely is their
23 argument that Illinois law will apply, a conclusion not
24 conceded by the plaintiffs. The fact -- or by the
25 plaintiff, the fact that the law of another State may

1  be the applicable law certainly is not in and of itself
2  sufficient to result in a forum non conveniens
3  dismissal particularly when there are substantial
4  questions as to whether Illinois could exercise
5  personal jurisdiction over some of the individual
6  defendants such as Pallat and Wojtowicz.
7              Plaintiff alleges that the fraud was
8  conceived and executed in New Jersey. Regardless of
9  what law ultimately is held to apply, New Jersey has an
10 interest in stopping fraudulent conduct emanating from
11 its borders.
12             Defendants have presented no compelling
13 factors demonstrating hardship or other compelling
14 circumstances that would cause this Court to dismiss
15 this case on the basis of forum non conveniens.
16             Three, motion to stay pending arbitration
17 filed by Radnor McKenzie, Aon Re, Smith, Pallat,
18 Wojtowicz and Dunne. Thus far substantive law disputes
19 arising from the worker's compensation reinsurance and
20 retro -- retro-sessional business at issue herein has
21 resulted in at least five arbitrations and five
22 lawsuits, including this one. There also have been a
23 number of lawsuits dealing with issues that are more
24 procedural in nature.
25             ReliaStar is or was a party to two of these

1  arbitrations and is the plaintiff herein. ReliaStar
2  was a party to the now concluded arbitration regarding
3  retro-sessional coverage and is a party to the pending
4  arbitration regarding the reinsurance issues.
5  ReliaStar did not commence the current arbitration
6  against Unicover although such a procedure was the only
7  way in which it could seek recovery against Unicover.
8  Two of the other pool members, however, commenced
9  arbitration against Unicover on May 22, 2003 asserting
10 claims of misrepresentation, non-disclosure, breach of
11 con -- contract, breach of fiduciary duty, bad faith
12 performance of duties under the contract,
13 misappropriation and unjust enrichment.
14         In response Unicover demanded arbitration
15 against ReliaStar and another pool member. Unicover
16 seeks unpaid management fees and commissions and
17 asserts claims of unjust enrichment, tortious
18 interference with prospective economic advantage,
19 business/commercial disparagement, conspiracy to
20 tortiously interfere with business and contractual
21 relationships and violation of the Federal and New
22 Jersey RICOH statutes.
23         On July 22, 2003 ReliaStar then counter
24 demanded arbitration against Unicover but did -- but
25 did not include fraud based claims similar to those

1  asserted herein.  It stated reason for such failure
2  being that Unicover is judgment proof.  Rather, it
3  asserted breach of contract, breach of fiduciary duty
4  and indemnification claims against Unicover although it
5  reserved its right to assert additional claims.
6          None of the defendants herein are parties to
7  the pending arbitration.  None of them are subject to
8  an arbitration agreement and none of them are willing
9  to voluntarily submit to arbitration despite their
10 repeated arguments that this international insurance
11 dispute is more appropriately arbitrated.
12         The other pool members have filed four
13 different lawsuits alleging substantive causes of
14 action against some of the same defendants herein.  Two
15 of those lawsuits were filed in the United States
16 District Court for the District of New Jersey and two
17 were filed in the United States District Court for the
18 District of Connecticut.  Various procedural motions
19 have been filed in all of those cases including motions
20 seeking a stay pending the current arbitration
21 involving the reinsurance issues.
22         Finally, it should be noted that on August
23 12, 2003 ReliaStar and two other pool members filed an
24 action in the United States District Court for the
25 District of New Jersey seeking an injunction freezing

The Court - Decision                                    22

1   assets of Craigwood, Unicover's successor in interest.
2   The relief was denied and the action was dismissed on
3   April 25, 2003.
4          Defendants first argue that this action
5   should be stayed based on Section Three of the Federal
6   Arbitration Act, which provides in part as follows:
7          If any suit or proceeding be brought in any
8   of the Courts of the United States upon any issue
9   referable to arbitration, the Court upon being
10  satisfied that the issue involved in such suit or
11  proceeding is referable to arbitration shall stay the
12  action until such arbitration has been had in
13  accordance with the terms of the agreement.
14         Defendants point to a developing line of
15  cases that grant a stay even through the party seeking
16  the stay is not a party to the arbitration agreement.
17  See for example Hill vs. GE Power Systems, Inc., 282
18  Fed. Third 343 at page 347, Fifth Circuit 2002.
19         In response, ReliaStar argues that these
20  defendants do not have standing to seek such a stay
21  because they are not parties to an arbitration
22  agreement with ReliaStar.  ReliaStar cites the more
23  traditional line of Federal cases that hold that a non-
24  party to the arbitration agreement has no standing to
25  seek a stay.  See for example I-D-S Life Insurance

The Court - Decision                               23

1   Company vs. Sun America, Inc., 103 Fed. Third 524,
2   pages 529 to 30, Seventh Circuit, 1996 and Marketing
3   Board of Israel vs. J. Loridson, A.F. (phonetic), 943
4   Fed. Second 220 at page 225, Second Circuit 1991.
5           At oral argument none of the parties were
6   aware of the position of the Third Circuit Court of
7   Appeals or the Supreme Court of New Jersey as to this
8   standing issue. The parties also were not able to
9   address whether section three of the Federal
10  Arbitration Act even applies to State courts. See Volt
11  Information Sciences, Inc. vs. Board of Trustees
12  (phonetic), 49 US 468 at page 477, footnote six, 1989.
13          At oral argument, however, defendants
14  conceded that none of the reported cases allowing non-
15  parties to the arbitration agreement to seek a stay
16  involved a case where no parties to the litigation are
17  jointly subject to an arbitration agreement.
18          Defendants thus are asking this State Trial
19  Court to make new law on three issues. First that
20  section three of the Federal Arbitration Act applies to
21  State Courts. Second that non-parties to the
22  arbitration agreement can seek a stay. Third that such
23  non-parties can seek a stay even if there are no
24  parties to the litigation that are jointly subject to
25  an arbitration agreement.

This Court declines to venture into law making to this degree. Accordingly, the issue that must be addressed is whether the defendants are entitled to a stay pending the arbitration pursuant to the traditional, equitable principles that control such a discretionary decision.

The parties do not seem to disagree that the standard that this Court is to apply in determining whether it is appropriate to impose a discretionary stay is -- discussed in Cosmotech Lisolick vs. Pikeoret, Limited (phonetic) -- and I have no idea if that pronunciation is correct, in any event, vs. Cosomet USA, Inc. (phonetic), 942 Fed. Supp. 757 at 760, District of Connecticut 1996. In that case the Court stated that it must be determined -- and this is a quote, "One, whether there are common issues in the arbitration and the court proceeding and two, if so whether those issues will be finally determined by the arbitration." And that's at page 760 of the Cosmotech case.

The Court went on to say that if the answer to both of these questions is yes, the non-party seeking the stay must show that the -- and this is a quote, "Non-arbitrating party will not hinder the arbitration, that the arbitration will be resolved

The Court - Decision                                             25

1  within a reasonable time and that such delay that may
2  occur will not cause undue hardship to the party."
3  That is at 760 of the Cosmotech case actually quoting
4  American Line -- American Shipping Line vs. Mason
5  Shipping Industries, 885 Fed. Supp. 499 at page 502,
6  Southern District of New York 1995.
7           I am not convinced that the standard to
8  assess whether to grant a discretionary stay is quite
9  so onerous.  See American Home Assurance Co. vs. Nico
10 Concrete Construction Co. (phonetic), 629 F Second 961
11 at page 964, Fourth Circuit, 1980.  In that case the
12 stay was granted because common questions of fact would
13 be resolved in the arbitration.  Also see Crawford vs.
14 West Jersey Health Systems, 847 F Supp. 1232 at page
15 1243, District of New Jersey 1994.  And this is a quote
16 the case states, "Where significant overlap exists
17 between the parties and issues, courts generally stay
18 the entire action pending arbitration."
19           In any event, even following the Cosmotech
20 standard the primary focus should be on factual issues
21 in determining whether there are common issues,
22 otherwise a party could craft a complaint so that the
23 legal issues are different than those at issue in the
24 arbitration.  In order to determine whether there are
25 common factual issues and whether the arbitration will

1  resolve some of those issues an analysis of the
2  complaint is important.  The complaint here contains 12
3  counts.  Each will be briefly addressed.
4          The first count asserts a claim under the New
5  Jersey RICOH statute against all of the defendants.
6  Unicover, Aon and Radnor are alleged to constitute one
7  enterprise and Unicover and another Unicover related
8  entity are alleged go constitute another enterprise.
9  Defendants are alleged to have conducted their
10 racketeering activities through both enterprises.
11         The second count asserts a fraudulent
12 misrepresentation -- I'm sorry, asserts a claim of
13 fraudulent misrepresentation against all of the
14 defendants.  In this count it is alleged that false
15 statements were made about the volume of business being
16 written and the retro-sessional coverage.
17         The third count asserts a claim of fraudulent
18 concealment against all of the defendants.  In this
19 count plaintiff is alleging that the defendants failed
20 to disclose the retro-session heir's concerns about the
21 volume of business being written and the possibility of
22 their ending the retro-sessional coverage.
23         The fourth count asserts a claim of civil
24 conspiracy to defraud against all the defendants.  In
25 this count ReliaStar specifically references the

1   fiduciary duties owed to it by Unicover and states that
2   Unicover principals owed it the same duties and that
3   Aon, Radnor and Smith knew of those duties and engaged
4   in a conspiracy with Unicover and its principals.
5           The fifth count asserts a claim for
6   conspiracy to defraud against Pallat, Dunne and
7   Wojtowicz. In this count ReliaStar specifically
8   references the duties owed to it by Unicover and that
9   Unicover principals owed it the same duties and engaged
10  in a conspiracy with Unicover.
11          The sixth count asserts a claim for aiding
12  and abetting fraud against all of the defendants. The
13  defendants are -- the defendants are said to have aided
14  and abetted the fraud perpetrated by Unicover.
15          The seventh count asserts a claim for
16  conversion against Pallat, Dunne, Wojtowicz and Aon.
17  This claim is based on Unicover paying itself out of
18  the pool trust account and then making dividend
19  payments to its principals. Aon is said to have
20  wrongfully converted es -- escrow funds and to have
21  shared in the funds converted by the Unicover
22  principals.
23          The eighth count asserts a claim for breach
24  of fiduciary duty against all the defendants. This
25  count is based on the perpetuation of the underwriting