1    strategy implemented by Unicover and their
2    participation in Unicover's tortious conduct.
3            The ninth count asserts a claim for aiding
4    and abetting the breach of fiduciary duty against all
5    of the defendants.  This count is based on the
6    defendants' knowledge of and assistance in Unicover's
7    breach of fiduciary duty.
8            The tenth count asserts a claim for breach of
9    contract against Aon and Radnor regarding the placement
10   of the retro-sessional coverage.
11           The eleventh count asserts a claim for unjust
12   enrichment against Radnor and Aon.  In connection with
13   this count it is alleged that Radnor and Aon and
14   Unicover engaged in negligent and deceptive
15   underwriting and reinsurance practices.
16           The twelfth count asserts a claim for breach
17   of good faith and fair dealing against Aon and Radnor.
18   It is alleged that Radnor and Aon engaged negligent and
19   deceptive practices in violation of their contract
20   obligations.
21           An analysis of these claims reveals that they
22   are derivative to the claims against Unicover.  In
23   other words, if Unicover is found not to have breached
24   any of its obligations there would be no claim against
25   principals or the brokers.  At oral argument ReliaStar

1  reluctantly conceded that if Uni -- if Unicover was
2  found not to have engaged in any wrongdoing ReliaStar
3  would have no claim against the Unicover principals.
4         ReliaStar, however, argued that there still
5  would be a claim against the brokers, Aon, its employee
6  Smith and Radnor.  Plaintiff was not able to articulate
7  to the satisfaction of this Court, however, what those
8  -- what those causes of action would be.
9         This Court does not read the complaint as
10 asserting any claims against Aon, its employee Smith or
11 Radnor that are separate from and independent of the
12 wrongs alleged to have been committed by Unicover.  The
13 operative facts out of which such claims arise involve
14 and are tied to the wrongdoing alleged against
15 Unicover.  This Court, therefore, answers both of the
16 preliminary questions regarding the issuance of a
17 discretionary stay in the affirmative.  If in the
18 arbitration Unicover is exonerated there probably would
19 be no viable claims against the defendants named
20 herein.  The fact that ReliaStar has affirmatively
21 chosen not to assert fraud based claims against
22 Unicover in the arbitration does not change that
23 result.  A party cannot be allowed to so easily
24 circumvent its arbitration obligation.  Moreover, the
25 other pool members have asserted such claims in the

1   arbitration.  So the underlying factual basis of those
2   claims will be dealt with in the arbitration.
3   Moreover, breach of fiduciary duty claims are asserted
4   by ReliaStar in the arbitration.
5           The Court now must determine whether the non-
6   arbitrating parties will hinder the arbitration,
7   whether the arbitration will be resolved in a
8   reasonable period of time and whether the stay will
9   cause undue hardship to any party.
10          Whether the non-arbitrating parties will
11  hinder the arbitration remains to be seen.  Plaintiff
12  raises the discovery difficulty presented by many of
13  these same parties during the retro-sessional
14  arbitration.  These parties deny that they presented
15  impediments to discovery or of the presentation of the
16  proofs in the arbitration.  Because this Court intends
17  to monitor the arbitration any impediments presented by
18  the non-arbitrating parties certainly would have to be
19  considered in any determination as to a continuation of
20  a stay.
21          As to whether the arbitration will be
22  resolved in a reasonable time -- period of time is as
23  might be surmised sub -- subject to widely divergent
24  views.  Defendants believe that the arbitration will be
25  concluded relatively quickly.  ReliaStar believes that

1   it will take years for the arbitration to conclude
2   based on the first arbitration taking approximately
3   three and a half years from filing to disposition.  No
4   discovery was done prior to the first arbitration,
5   however.  In contrast here as alleged by ReliaStar in
6   connection with its opposition to the motion to change
7   the track assignment from track one to track four, most
8   of the discovery has been completed.  Thus, at least
9   according to ReliaStar discovery proceedings, whether
10  here on in the arbitration, should not take as long as
11  they did in the arbitration proceeding involving the
12  retro-session heirs.  The arbitration herein therefore
13  should take place much more quickly than it did the
14  first time around.
15          In any event, this Court can monitor the
16  arbitration proceeding and if it becomes too lengthy
17  can reactivate the litigation.
18          As to undue burden, the only burden that
19  ReliaStar posits is a financial burden.  It argues that
20  it has lost so much money that the litigation must
21  proceed because it has no other way of recouping its
22  losses.  On the other hand, the duplicative factual
23  issues raised in the arbitration proceeding and this
24  litigation will result in all of the parties and the
25  Court utilizing resources for what may be for naught.

The Court - Decision                                    32

1  The factual and legal issues in the pending arbitration
2  and in this case are inextricably intertwined because
3  they are grounded on the participation and culpability
4  of Unicover.  If this litigation were to proceed
5  Unicover's culpability would have to be determined, yet
6  that is the precise issue that will be decided in the
7  pending arbitration proceeding.  To duplicate these
8  factual and legal determinations would be a waste of
9  judicial resources and lend to the possibility of
10 inconsistent results.
11        For all of these reasons this Court grants
12 the defendants' application for a stay with two
13 caveats.  First, if the other courts in which stay
14 applications are pending do not grant the stay, the
15 continuation of this case becomes less of a burden for
16 all involved.  Furthermore, if the other action
17 proceeds it would be highly unfair and prejudicial to
18 ReliaStar to have the actions -- by all of the other
19 pool members proceed while its action is stayed.
20        Accordingly, this Court will reconsider its
21 decision to stay these proceedings upon an appropriate
22 application if one or more of the other pending cases
23 filed by the pool members are not stayed.
24        Moreover, this Court further will monitor the
25 arbitration by scheduling periodic status conferences

The Court - Decision                         33

1  to insure that this case does not remain inactive if
2  the arbitration proceeding is delayed for an undue
3  length of time.  The first status conference is
4  scheduled for May 7, 2004 at 1:30 and I do have the
5  order already done.  I thought that was probably the
6  easiest way to deal with it and we'll pass it out to
7  you.  Thank you.
8
9                     CERTIFICATION
10
11 I, GAIL M. TORNETTA, the assigned transcriber, do hereby
12 certify the foregoing transcript of proceedings on Tape
13 number 1, index number from 1152 to 4021, is prepared in
14 full compliance with the current Transcript Format for
15 Judicial Proceedings and is a true and accurate non-
16 compressed transcript of the proceedings as recorded.
17
18
19
20 _____
21 GAIL M. TORNETTA   AOC #511
   G&L TRANSCRIPTION OF NJ        Date: November 12, 2003
22
23
24
25

# EXHIBIT 3

Desk Copy

Occupational Accident Reinsurance
Pool Management Agreement

between

Unicover Managers, Inc.
901 Warrenville Road, Suite 115
Lisle, IL 60532

and

Connecticut General Life Insurance Company
900 Cottage Grove Road, R-26
Hartford, CT 06152-4026

and

Phoenix Home Life Insurance Company
100 Bright Meadow Boulevard
P.O. Box 1900
Enfield, CT 06083-1900

and

Lincoln National Life Insurance Company
1700 Magnavox Way
P.O. Box 7808
Fort Wayne, IN 46801-7808

and

Reliastar Life Insurance Company
20 Washington Avenue South
Minneapolis, MN 55401-1900

and

Cologne Life Reinsurance Company
30 Oak Street
P.O. Box 300
Stamford, CT 06904-0300

# Occupational Accident Reinsurance
# Pool Management Agreement

This Pool Management Agreement ("Agreement") is entered into between and among the companies listed in Addendum A ("the Current Pool Year List") attached hereto (collectively, "The Reinsurers"), on the one hand, and Unicover Managers, Inc., 901 Warrenville Road, Suite 115, Lisle, Illinois 60532 ("Unicover"), on the other.

Witness:

A. Whereas, Unicover is a duly constituted entity licensed to transact the business contemplated by this Agreement and is in the business of marketing, administering, servicing, and underwriting reinsurance business; and

B. Whereas, the Reinsurers desire to issue contracts of reinsurance to various issuers of occupational accident insurance & workers compensation insurance that are licensed and domiciled in various states of the United States; and

C. Whereas, the Reinsurers desire to underwrite, issue, and service such contracts of reinsurance with the assistance of Unicover as set forth herein; and

D. Whereas, the Reinsurers have indicated an intent to authorize Unicover to serve as the administrator of their cooperative arrangement as described in this Agreement, to be known as the Unicover Occupational Accident Pool ("the Pool"), in which capacity Unicover would be authorized to market, administer, service, and underwrite the reinsurance business written by the Reinsurers through the Pool, and otherwise act in the best interests of the Pool as a whole; and

E. Whereas, Unicover has indicated an intent to represent the Reinsurers by serving as administrator of the Pool;

Now, therefore, in consideration of the following promises, the parties agree as follows:

1. **POOL COMPOSITION**

   For each Pool Year, the Pool shall be composed of The Reinsurers listed in Addendum A (as it may be modified from time to time as provided herein), who shall each be severally, but not jointly, liable under any and all Original Reinsurance Contracts and Inward Retrocessional Contracts issued under this Agreement to the extent of their respective Member Participation Percentages as set forth in Addendum A, and who shall receive a portion of The Reinsurers' share of premiums from such Original Reinsurance Contracts and Inward Retrocessional Contracts in accordance with their respective Member Participation Percentages.

2. **APPOINTMENT OF ADMINISTRATOR**

   The Reinsurers hereby designate and appoint Unicover as Administrator of the Pool, in which capacity Unicover shall perform the duties hereinafter set forth. Unicover accepts the appointment and agrees to represent The Reinsurers and to perform the duties of Administrator. Unicover agrees to act in accordance with reasonable professional standards in all matters subject to this contract. The Reinsurers appoint Unicover to act as their Administrator for purposes of writing the business contemplated by this Agreement.

3. **AUTHORITY OF UNICOVER**

   a) Unicover's authority as regards Original Reinsurance Contracts extends only to business defined by Unicover as Occupational Accident and falling within the guidelines set forth in Addendum E ("the Placement Slip") attached hereto (including attachments to the Placement Slip), said business hereinafter referred to as "Pool Original Reinsurance Business."

- 1 -

12/16/98 7:19 PM

b) Unicover may bind and execute Inward Retrocessional Contracts on The Reinsurers' behalf, but only with the prior written approval of all The Reinsurers.

c) Subject to the terms of this Agreement, Unicover has authority, as Administrator:

   i) to solicit, negotiate, underwrite, bind, accept, decline, execute, and deliver Original Reinsurance Contracts and Inward Retrocessional Contracts on behalf of and as the disclosed agent of The Reinsurers;

   ii) to execute endorsements, renewals, and cancellations of such contracts;

   iii) to collect and receive premium under such contracts in accordance with Paragraph 5;

   iv) Admitting, settling, adjusting, managing and paying claim losses and loss adjustment expenses where applicable in respect of all reinsurance contracts executed pursuant to this agreement, pursuing and collecting all returns and recoveries where applicable, including recoveries from any ceded reinsurance secured on the members behalf.

   v) to deduct from the Unicover Managers Inc. Pool Trust Account (as defined in Paragraph 5(b)) its Management Fee (as defined in Paragraph 6) and Reimbursable Expenses (as set forth in Paragraph 7);

   vi) to bind Outward Retrocessional Contracts in accordance with Paragraph 8; and

   vii) to do all other things that, in its professional discretion, are appropriate and necessary to the administration of the Pool.

d) When authorized under this Agreement to sign and execute Original Reinsurance Contracts and Inward Retrocessional Contracts, as well as endorsements, renewals, and cancellations thereof, Unicover shall sign in the name of "Unicover Managers, Inc., as agent of The Reinsurers participating in the Unicover Managers Occupational Accident Pool", as outlined in Addendum A in force as of the date of execution of said document.

e) Unicover may exercise the authority granted to it under subparagraph (c) of this Paragraph through the use of or in cooperation with such third parties as are specifically approved in writing by The Reinsurers, such approval not to be unreasonably withheld. Unicover has authority to agree to any and all terms and conditions of its use or cooperation with such third parties. Unicover is responsible for the payment and adjustment of any commissions to such third parties.

f) Notwithstanding the preceding subparagraph, Unicover may not appoint a Sub-Administrator to carry out the entirety of its duties and obligations under this Agreement.

4. **LIMITATIONS ON POOL REINSURANCE BUSINESS**

a) Pool Original Reinsurance Business shall be limited to risks domiciled or principally located in the states or jurisdictions set forth in Addendum B.

b) Unicover may accept Pool Original Reinsurance Business from ceding insurers with a current rating less than "A-" (as determined by A.M. Best Company) with the prior approval of The Reinsurers, who shall respond in writing within five (5) business days of the receipt of any written request for such approval. Such business shall be deemed approved if no written or faxed response is received from The Reinsurers

- 2 -

12/16/98 7:19 PM

Pool Year, the balance will be distributed based upon participation for the applicable year. As long as a balance is maintained, interest will accrue and be distributed quarterly to The Reinsurers.

e) Should the Funds Withheld Balance be insufficient to pay any claim(s), Unicover shall notify each and all current and withdrawn Reinsurers liable for said claim(s) under Original Reinsurance Contracts and Inward Retrocessional Contracts issued hereunder, and each and all such Reinsurers shall within thirty (30) days after such notice remit to Unicover their respective shares of said claim(s).

f) Nothing in this Agreement shall be construed to hold or render Unicover liable for claims arising under Original Reinsurance Contracts and Inward Retrocessional Contracts written on The Reinsurers behalf hereunder.

6. **COMPENSATION OF UNICOVER**

As compensation for its services hereunder, Unicover shall receive:

a) a Management Fee, up to 7.5% of Original Gross Ceded Written Premiums for Pool Original Reinsurance Business and Inward Retrocessional Contracts written under this Agreement;

b) a Profit Commission determined by the formula attached as in Paragraph 29 hereto.

7. **ADMINISTRATION EXPENSES**

Unicover shall pay and discharge all expenses of conducting its own business with the exceptions of the following expenses, which shall be reimbursed by The Reinsurers:

a) sums spent in the investigation and settlement of claims, under Original Reinsurance Contracts and Inward Retrocessional Contracts which excludes salary and day to day administration expenses of Unicover, and shall be chargeable to The Reinsurers as Allocated Loss Adjusted Expense (A.L.A.E.)

b) actuarial fees that may be incurred by a third party in the course of examining, determining, or certifying loss reserves of the Pool, including but not limited to fees paid to auditors, accountants, or consultants for purposes of audits or analyses of the Pool's results, which shall be chargeable to The Reinsurers;

c) Business Acquisition Expense. Payable as Reinsurance Brokerage or Fees.

8. **OUTWARD RETROCESSIONS**

a) Any and all retrocessionaires who participate in reinsuring any Original Reinsurance Contracts or Inward Retrocessional Contracts issued under this Agreement shall collectively be referred to in this Agreement as "The Retrocessionaires of the Pool."

b) Unicover shall only bind and/or execute the purchase of Outward Retrocessional Contracts on behalf of The Reinsurers with approved markets as outlined in Addendum C. Unicover agrees to notify The Reinsurers within a reasonable time period after binding any retrocessions.

c) Unicover shall be responsible for paying from the Unicover Managers Inc. Pool Trust Account all premiums due to The Retrocessionaires of the Pool under the terms and conditions of the applicable Outward Retrocessional Contracts.

d) Unicover shall advise The Reinsurers of any requests from The Retrocessionaires of the Pool for underwriting and/or claims audits.

- 4 -

12/16/98 7:19 PM

9. **REPORTS AND RECORDS**

   a) Unicover shall separately maintain at its principal administrative office accounting books and records, available to current and withdrawn Reinsurers for inspection and copying at all reasonable times, respecting premiums, losses, and all transactions with cedants of The Reinsurers on the business written hereunder, and shall render a quarterly account within thirty (30) days after the close of each quarter summarizing the premium ceded, commissions, and taxes, and amounts payable to Unicover on net premiums, paid and outstanding losses (inclusive of LAE), salvages recovered and premiums for Outward Retrocessional Contracts. These records and accounts shall be maintained, in accordance with generally accepted accounting and reinsurance practices, for a period of seven (7) years following termination of this Agreement or such lesser period as may be agreed upon by The Reinsurers and Unicover.

   b) Unicover shall allow designated representatives of current and withdrawn Reinsurers to personally examine, copy, and audit all documents, books of account, reports, bank statements for the Unicover Managers Int. Pool Trust Account, and all other records in possession of, or under the control of Unicover, relating to the business covered by this Agreement.

   c) The accounting books and records maintained in accordance with subparagraphs (a) and (b) of this Paragraph, as well as all other accounting, actuarial, bookkeeping, and similar records maintained by Unicover in accordance with this Agreement, and certain renewals as provided in Paragraph 12(g)(iv) and 15(c), shall be the sole property of Unicover. All binders, Original Reinsurance Contracts, and Inward Retrocessional Contracts of reinsurance issued under this Agreement shall be the property of The Reinsurers participating thereon. All claims files maintained pursuant to this Agreement for a given Pool Year shall be the joint property of The Reinsurers or their conservators or liquidators participating in that Pool Year and Unicover.

10. **CLAIMS ADMINISTRATION**

   a) Unicover shall notify The Reinsurers of total paid and outstanding losses under Original Reinsurance Contracts and Inward Retrocessional Contracts issued under this Agreement by including such information in the quarterly financial statement rendered to each reinsurer pursuant to Paragraph 9(a).

   b) Unicover shall adjust and make final settlement of all claims under Original Reinsurance Contracts and Inward Retrocessional Contracts issued hereunder except

   i) individual claims that exceed $150,000 incurred (100% net to the Pool after deduction of recoveries under Outward Retrocessional Contracts which require written prior authority from The Reinsurers to settle;

   ii) claims that are the subject of a coverage dispute, the handling of which shall be determined by The Reinsurers.

   c) Upon request by any Reinsurer, Unicover shall provide that Reinsurer either by audit in Unicover's offices, or by mail to The Reinsurers address with copies of any and all claims files in its possession for claims arising under Original Reinsurance Contracts and Inward Retrocessional Contracts on which that Reinsurer participates.

   d) Unicover shall notify The Reinsurers of claim recoveries outstanding for a period greater than six months.

- 5 -

12/16/98 7:19 PM

# EXHIBIT 4

~2898056.txt

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CIVIL NO. 03-382

GENERAL & COLOGNE LIFE RE       :
OF AMERICA, PHOENIX LIFE        :
INSURANCE CO., and              :
RELIASTAR LIFE INSURANCE        :
COMANY,                         :
                                :
            Plaintiffs,         :
                                :   TRANSCRIPT OF PROCEEDINGS
        -vs-                    :
                                :
CRAGWOOD MANAGERS, LLC,         :
SUCCESSOR IN INTEREST OF        :
UNICOVER MANAGERS, INC.,        :
                                :
            Defendants.         :

Newark, New Jersey
August 25, 2003

B E F O R E:

THE HONORABLE JOEL A. PISANO
UNITED STATES DISTRICT COURT JUDGE

A P P E A R A N C E S:

LEBOEUF, LAMB, GREENE & MACRAE
BY:  JOHN NONNA, ESQ.,
     KEVIN SCHROTH, ESQ.,
     WILLIAM BODKIN, ESQ.,
For the Plaintiffs.

Pursuant to Section 753 Title 28 United States Code,
the following transcript is certified to be an
accurate record as taken stenographically in the
above-entitled proceedings.

Joanne M. Caruso, CSR, CRR
Official Court Reporter

0

2

APPEARANCES CONTINUED:

SHEARMAN & STERLING

Page 1

~2898056.txt
BY:  HENRY WEISBURG, ESQ.,
     BRIAN POLOVOY, ESQ.,
     And
RIKER, DANZIG, SCHERER, HYLAND & PERRETTI
BY:  JULIAN W. WELLS, ESQ.,
     GERALD A. LILOIA, ESQ.,
For the Defendant Cragwood.

MC CARTER & ENGLISH
BY:  MATTHEW G. WAPNER, ESQ.,
     And
CRAVATH, SWAINE & MOORE
BY:  CHRISTIE CORA TRUE-FROST, ESQ.,
For Plaintiff ReliaStar.

EDWARDS & ANGELL
BY:  E. PAUL KANEFSKY, ESQ.,
For Phoenix Life Ins. Co.

LATHAM & WATKINS
BY:  JAMES HUNT, ESQ.,
     BLAIR CONNELLY, ESQ.,
For Lincoln National Life Ins. Co.

                                                              3

 1                    August 25, 2003
 2         THE CLERK:   General & Cologne Life v.
 3   Cragwood.
 4         Please note your appearances for the record.
 5         MR. SCHROTH:   Kevin Schroth for General and
 6   Cologne.
 7         MR. NONNA:   John Nonna from LeBoeuf, Lamb.
 8         MR. KANEFSKY:   Paul Kanefsky, Edwards & Angell,
 9   for Phoenix.
10         MR. WAPNER:   Matthew Wapner from McCarter &
11   English, and I'd like to introduce Christie Cora
12   True-Frost of Cravath, Swaine & Moore.
13         THE COURT:   Please spell your name for me.
14         MS. CORTRUE-FROST:   T-r-u-e - F-r-o-s-t.
15         THE COURT:   You represent?
16         MS. TRUE-FROST:   Plaintiff ReliaStar.
17         THE COURT:   Anybody else from the plaintiffs
18   side?