~2898056.txt

1  showing?
2      THE COURT: We'll get to that in a minute.
3      There's an argument here, and I don't know how
4  much weight I give it, but there is an argument being
5  made in these papers that Cragwood is on the brink of
6  bankruptcy and that in the event this relief is
7  denied, the balance of the $4 million is somehow
8  going to disappear and you, Cragwood, will be off in
9  the unknown and this claim will never be satisfied
10 after they prevail.
11     MR. WEISBURG: First of all, there is no
12 evidence of any impropriety with respect to this
13 money. There is no absconding, there is no evidence
14 of people doing anything wrong with this money.
15     As Cragwood has made clear, as these plaintiffs
16 know, the major expense of Cragwood by far, probably
17 to the tune of 99 percent, is legal fees. These
18 plaintiffs control Cragwood's budget.
19     THE COURT: By the way, I note the irony here.
20 I find it ironic that these plaintiffs are being
21 heard to complain about extraordinary legal fees
22 incurred by Cragwood when they have brought Cragwood
23 into some seven, eight, nine separate proceedings.
24     MR. WEISBURG: That's what's happening here.
25 We have -- I don't know if it's forum shopping or

49

1  what we call it, but there's the most intent
2  proliferation of litigation by these plaintiffs.
3  That's what Cragwood is writing checks for.
4      Cragwood has an extremely small staff,

~2898056.txt

10       As to the irreparable harm, let me point out
11  several things, your Honor. I hear Mr. Weisburg
12  telling us how poor little Cragwood has no money.
13  Your Honor, as we pointed out in our reply papers,
14  the principles of Cragwood drew $40 million in
15  dividends out of Cragwood in 1999 and 2000. There
16  was money in the company and it's gone.
17       More money may be gone --
18       THE COURT: You're suing those principles in a
19  couple of other courts.
20       MR. NONNA: Yes, your Honor, but the issue --
21       THE COURT: Why didn't you try to freeze that
22  money in that case? Doesn't that make logical sense?
23       MR. NONNA: Your Honor, the first step here is
24  to prove in the arbitration that Cragwood, in our
25  view, that Cragwood has breached its duties. Then

51

1   there's the ability to go after the other parties.
2        Several years ago, Cragwood itself in another
3   arbitration involving Reliance, which is another
4   party that sued Cragwood, got arbitrators to require,
5   secured an award that required Cragwood to post a
6   bond and there they claimed we're going bankrupt, we
7   can't afford to post the bond because we have to
8   defend this case and the Court sustained this award.
9        Your Honor, I apologize for the oversight with
10  respect to the local rules and I believe that
11  shouldn't be a basis to deny the relief sought here.
12       THE COURT: It's not going to be.
13       First of all, with respect to the way that this

# EXHIBIT 5



Aon Services Corporation

December 11, 2001

R. Bruce Slocum
Litigation Counsel

*Via Facsimile* (312) 984-3150,
(860) 527-4198 and *U.S. Mail*

W. Scott Porterfield
Barack Ferrazzano Kirschbaum Perlman & Nagelberg
333 West Wacker Drive, Suite 2700
Chicago, IL 60606

Daniel H. Wright
Edwards & Angell, LLP
90 State House Square
Hartford, CT 06103-4198

Re: Arbitration Between Sun Life, et al. v. Unicover Managers, Inc., et al.

Gentlemen:

We have received the subpoenas issued by the arbitration panel to Jim Eggert and Roger Smith. Be advised that neither Mr. Eggert nor Mr. Smith will be produced for deposition as the arbitration panel is without authority to order a non-party to participate in pre-arbitration discovery. Pre-arbitration discovery is impermissible as to non-parties pursuant to the Federal Arbitration Act, 9 U.S.C. §7. *Comsat Corp. v. National Science Foundation*, 190 F.3d 269 (4th Cir. 1999); *In the Matter of Arbitration Between Legion Ins. Co. v. John Handcock Mutual Life Ins. Co.*, 2001 U.S. Dist. LEXIS 15911 (E. Dist. Penn., Sept. 5, 2001); *Wright v. SFX Entertainment, Inc.*, 2001 U.S. Dist. LEXIS 1000 (S. Dist. N.Y., Feb. 8, 2001); *In the Matter of Arbitration Between Integrity Ins. Co. v. American Centennial Ins. Co.*, 885 F. Supp. 69 (S. Dist. N.Y. 1995).

In addition to the fact that the panel lacks authority to issue the subpoenas, the subpoenas are defective facially.

If you have any questions, please do not hesitate to call.

Very truly yours,

R. Bruce Slocum

Aon Center
200 East Randolph Street 8th Floor · Chicago, Illinois 60601
tel 312 381 5154 · fax 312 381 0252 · e-mail Bruce_Slocum@aon.com · www.aon.com

# EXHIBIT 6

3/25/2002 Arbitration Hearing

```
 1   -----------------------------x In the Matter of the Arbitration
 2
 3                between
 4   SUN LIFE ASSURANCE COMPANY OF CANADA, PHOENIX HOME LIFE MUTUAL INSURANCE
 5   COMPANY AND AMERICAN PHOENIX LIFE AND REASSURANCE COMPANY,
 6                            Petitioners,
 7                -and-
 8   CONNECTICUT GENERAL LIFE INSURANCE
 9   COMPANY, et al.,
10                            Respondents.-----------------x
11                200 Park Avenue
12                New York, New York
13                March 25, 2002             11:20 p.m.
14
15   B E F O R E:
16   THOMAS M. TOBIN, ESQ., Umpire
17   DANIEL E. SCHMIDT, IV, ESQ., Arbitrator
18   PAUL E. DASSENKO, ESQ., Arbitrator
19
20
21   Gail F. Schorr, C.S.R.,
22   Hearing Reporter
23
```

---

3/25/2002 Arbitration Hearing

```
 1
 2   A P P E A R A N C E S:
 3   CLIFFORD CHANCE ROGERS & WELLS, L.L.P. Attorneys for Petitioner SUN LIFE
 4   ASSURANCE COMPANY OF CANADA        200 Park Avenue
 5                New York, New York 10166
 6   BY:  PETER R. CHAFFETZ, ESQ.     STEPHEN C. SCHWARTZ, ESQ.
 7                -and-    CECILIA C. FROELICH, ESQ.
 8
 9   LeBOEUF, LAMB, GREENE & MacRAE,
10   Attorneys for Petitioner GENERAL &COLOGNE LIFE RE of AMERICA
11                125 West 55TH Street         New York, New York 10019
12   BY:  JOHN M. NONNA, ESQ.
13           -and-    LARRY P. SCHIFFER, ESQ.
14
15   EDWARDS & ANGELL, LLP
16   Attorneys for Petitioners PHOENIX LIFE INSURANCE COMPANY and AMERICAN PHOENIX
17   LIFE AND REASSURANCE COMPANY       750 Lexington Avenue
18                New York, New York 10022
19   BY:  E. PAUL KANEFSKY, ESQ.
20
21
22
23
```

2

3/25/2002 Arbitration Hearing

```
 1   APPEARANCES (Continued):
 2
 3   EDWARDS & ANGELL, LLP Attorneys for Petitioners PHOENIX LIFE
 4   INSURANCE COMPANY and AMERICAN PHOENIX LIFE AND REASSURANCE COMPANY
 5      90 State House Square    Hartford, Connecticut 06103-2715
 6   BY:  JOHN B. ROSENQUEST III, ESQ.
 7
 8   SHEARMAN & STERLING
 9   Attorneys for Respondent CRAGWOOD MANAGERS, L.L.C.
10      599 Lexington Avenue    New York, New York 10022
11   BY:  HENRY WEISBURG, ESQ.
12         -and-    MARK S. McNEILL, ESQ.
13
14   CADWALADER, WICKERSHAM & TAFT
15   Attorneys for Respondent CONNECTICUT GENERAL LIFE INSURANCE COMPANY
16      100 Maiden Lane    New York, New York 10038
17   BY:  CLIFFORD H. SCHOENBERG, ESQ.
18         -and-    HARRY P. COHEN, ESQ.
19
20
21
22
23
```

3

3/25/2002 Arbitration Hearing

```
 1   APPEARANCES (Continued):
 2
 3   CRAVATH, SWAINE & MOORE Attorneys for Respondent RELIASTAR LIFE
 4   INSURANCE COMPANY    Worldwide Plaza
 5      825 Eighth Avenue    New York, New York 10019
 6   BY:  SAMIRA SHAH, ESQ.
 7
 8   PILLSBURY WINTHROP
 9   Attorneys for Respondent THE LINCOLN NATIONAL LIFE INSURANCE COMPANY and
10   LIFE REASSURANCE CORPORATION OF AMERICA    50 Fremont Street
11      San Francisco, California 94120
12   BY:  CHRISTOPHER L. BYERS, ESQ.
13
14   ALSO PRESENT:
15   KENT SAVAGE, ESQ. Sun Life Assurance Company of Canada
16   CHRISTOPHER R. BELLO, ESQ.
17   General Reinsurance Corporation
18   ANNE QUINN, ESQ. General Reinsurance Corporation
19
20
21
22
23
```

4

3/25/2002 Arbitration Hearing

1  counsel for Phoenix, wrote to Harry
2  Cohen and pointed out that getting
3  discovery out of Aon can be a long
4  fight, as certain petitioners know from
5  recent experience, and we need to be
6  able to plan for any delays in this
7  regard.
8      On December 10th, 2001,
9  Mr. Rosenquest wrote to Harry Cohen and
10 said with respect to the Aon witnesses,
11 "We have no present intention of
12 calling any of the four witnesses at
13 trial. You have listed all four of
14 these gentlemen as deposition
15 witnesses. You are obliged to produce
16 them for discovery deposition in order
17 to preserve your right to call them.
18 We will oppose the appearance of any
19 witness at trial who has not submitted
20 to a deposition of reasonable length in
21 relation to his or her role in the
22 case."

3/25/2002 Arbitration Hearing

1      Now, these are not our
2  witnesses. We have no obligation to
3  assist in procuring the production of
4  hostile testimony. I point out with
5  respect to Tom Dunn, Mr. Schiffer wrote
6  a similar letter on January 11th.
7      So if it was going to
8  require extraordinary proceedings of
9  the kind that are now being proposed,
10 we think it's far too late for the
11 world to be turned upside down in order
12 to bring this about because respondents
13 had such a long time to address this in
14 a more timely and workable fashion and
15 the burden, the logistical burden of
16 dealing with it now falls on us, not on
17 them.
18     I don't think I need to say
19 too much about the importance of
20 depositions. It seemed implicit in
21 what Mr. Tobin said that the panel
22 recognizes this.

3/25/2002 Arbitration Hearing

1  rewarding these people for staying out
2  of your discovery process and allowing
3  them to testify essentially on direct
4  in support of Unicover before we have
5  had a chance to examine them in a
6  discovery deposition outside of the
7  panel's presence.
8       So all of the prejudice and
9  downside that we have been opposing
10 here is intrinsic to what you suggested
11 at the beginning as a possible
12 solution.
13      Again, if those people will
14 come to be deposed without the panel,
15 just has happened with every other
16 witness, we'll do it, even though we
17 think it's a great imposition.
18      But it is not a solution to
19 any of the objections we've raised for
20 the panel to convene and conduct a
21 deposition at which the panel attends.
22 It just does not give us a fair chance

111

3/25/2002 Arbitration Hearing

1  to cross examine those witnesses and to
2  be able to limit them and cross examine
3  them on their statements to you in
4  support of Unicover if you see them at
5  the same time as we do for the first
6  time. I don't believe this would ever
7  be permitted in court. It would be
8  clear the judge would say if you want
9  me to see this person, arrange for his
10 deposition, you can do it today and
11 we'll see him in trial tomorrow, that
12 would be done. But to just say we'll
13 both meet Mr. Dunn and Smith at the
14 same time is terribly unfair and I
15 would strongly urge you not to go that
16 route.
17      MR. SCHIFFER: Let me just
18 mention two technical points which have
19 been brought up in the letters with a
20 couple of the cases that have been
21 discussed. The case being cited for
22 authority in Illinois to allow the

112

3/25/2002 Arbitration Hearing

1   deposition procedure by a subpoena, if
2   you take a very close look at the case,
3   what the court says there when the
4   court says that the arbitrator's
5   subpoena is both valid and enforceable,
6   he's saying so in the context that the
7   parties had agreed to arbitrate their
8   dispute pursuant to the Federal Rules
9   of Civil Procedure and therefore, those
10  liberal rules apply, the deposition
11  rules and those kinds of things apply.
12      If you look at the
13  decision, basically near the end of the
14  decision, the third paragraph from the
15  end of the decision you'll see what the
16  court's holding is.
17      So that case is really
18  limited to its specific facts where the
19  parties as part of their arbitration
20  agreement agreed to have the Federal
21  Rules of Civil Procedure apply. So it
22  really didn't apply in this case at

113

3/25/2002 Arbitration Hearing

1   all.
2       The second thing is if we
3   look at the Fourth Circuit case that
4   has been cited by us, the court makes
5   it explicitly clear in that case at
6   about Pages 16 to 17 where they say
7   "Nowhere does the FAA grant an
8   arbitrator the authority to order
9   nonparties to appear at depositions,"
10  and it goes on.
11      So basically the cases
12  cited and the overall theme of the
13  cases cited, but for one case that has
14  a very, very special circumstance, the
15  involvement of the federal rules,
16  basically say that the arbitrators just
17  don't have the power.
18      MR. ROSENQUEST: One
19  perhaps more practical comment having
20  to do with the history of the discovery
21  in this case. Early on we had listed
22  several witnesses from Reliance on our

114

3/25/2002 Arbitration Hearing

1  he communicated with the panel, Dan
2  Wright of Edwards & Angell was the one
3  who went to the panel and said we need
4  a subpoena for Roger Smith because he's
5  not appearing voluntarily. You gave
6  him that subpoena and he had it served
7  on Roger Smith of Aon. Then Aon wrote
8  a letter to Dan Wright and said we're
9  not appearing, here's the case law that
10 supports our position that the panel
11 doesn't have the authority to issue a
12 subpoena.
13    What did they do? They
14 dumped it in our lap. That's when
15 Mr. Rosenquest wrote his e-mail to me
16 saying, well, you know what, we don't
17 want to call these Aon witnesses, but
18 if you want them, you have an
19 obligation to make them appear for
20 deposition. They made up the rules.
21 We agreed in advance they would deal
22 with Aon, they couldn't get it done

119

3/25/2002 Arbitration Hearing

1  because Aon stonewalled them and built
2  a brick wall and said we're not going
3  to produce Roger Smith, and instead of
4  going to the panel and doing this
5  research and saying we've got this
6  predicament, they're critical
7  witnesses, very important, centrally
8  involved in the disputes at issue, we
9  need to enforce a subpoena, how are we
10 going to deal with it, they tried to
11 dump it in our lap and blame us for not
12 being able to produce a witness who
13 they admitted from day one we don't
14 control. How is that our fault? It's
15 their fault. They should have moved to
16 compel compliance with the subpoena.
17 They chose not to do it even though we
18 told them all along we too thought
19 these were important witnesses and we
20 intended to call them at the hearing.
21    Their predicament is
22 self-inflicted, it's not our fault. We

120

3/25/2002 Arbitration Hearing

1  have respect for the law.  The law says
2  that Aon for whatever reason, Roger
3  Smith for whatever reason, Tom Dunn for
4  whatever reason, they're entitled to
5  protect themselves to the extent they
6  think it's appropriate by relying on
7  whatever the law is under the Federal
8  Arbitration Act.  That's their
9  prerogative.  That doesn't make it our
10 problem.  We don't control these
11 people.  We've said it a million times.
12 We're blue in the face.
13         I heard Mr. Chaffetz say at
14 least three or four times their
15 witnesses, their witnesses, their
16 witnesses, their witnesses.  It's just
17 not true.  I don't know how I can say
18 it any more clearly.  I really want you
19 guys to pick up the phone and call
20 Shand Stephens and call Lazar Raynal
21 and call Everett Cygal and confirm for
22 yourself we do not control these

121

3/25/2002 Arbitration Hearing

1  witnesses.
2         In terms of this analogy
3  with Mr. Cackett and all these
4  wonderfully cooperative Sun and Phoenix
5  witnesses, again, you know, it's like
6  Fantasy Land.  A lot of the witnesses
7  in this case testified, appeared
8  voluntarily on their side and on our
9  side.  Some refused to appear on their
10 side and on our side.  We all have to
11 deal with that based on whatever the
12 law is applicable to the rights of the
13 parties.
14         We dealt with Wright and
15 Ekwall who frankly we believe are
16 probably just as important as Smith and
17 Dunn by saying, okay, we can't compel
18 them, we believe the law supports their
19 position that we can't compel them to
20 appear for both.  So we'll call them at
21 the hearing.  We told them that's what
22 we're going to do.  They want to keep

122

3/25/2002 Arbitration Hearing

1  cooperative and so forthcoming. They
2  neglect to mention that they have a
3  consultancy agreement with him which,
4  by the way, he testified at his
5  deposition, is his sole source of
6  income and he's being paid hundreds of
7  pounds an hour to prepare for his
8  deposition and to appear for his
9  deposition.
10      Yes, I'm sure he wants his
11  story to be heard, a lot of witnesses
12  would like their story to be heard, but
13  the fact that there are a couple of
14  witnesses who would rather not be
15  bothered is not a ground to be accusing
16  the other side of lying and
17  orchestrating and manipulating to get a
18  tactical advantage with respect to
19  witnesses who they've admitted a
20  hundred times are key to the case.
21      We just don't understand
22  their position.

3/25/2002 Arbitration Hearing

1       THE UMPIRE: Any other
2  comments?
3       MR. BYERS: I think there's
4  no one in the room who would suggest
5  here these aren't very important
6  witnesses. Everybody agrees with that,
7  and Mr. Chaffetz made it clear at least
8  several times in his discussion. So it
9  isn't a question of whether we should
10 hear them, it's whether we've done
11 something wrong that should keep us
12 from hearing them.
13      They blame us for two
14 things. One is they didn't get to take
15 a prehearing deposition. We didn't
16 write the law. Mr. Chaffetz compares
17 it to a trial or a court proceeding.
18 If this was a court proceeding you'd
19 compel their depositions by
20 out-of-state commissions. We can't do
21 that here. It's different than a court
22 proceeding. It's not our fault that

3/25/2002 Arbitration Hearing

1    the law doesn't allow us to compel a
2    prehearing deposition. That's one.
3        Number 2, he suggests
4    without any evidence whatsoever that
5    these are people who should cooperate
6    with us or we can get their cooperation
7    and we're not trying. He suggests
8    they're friendly. The fact of the
9    matter is we can't get them to show up
10   for prehearing depositions. They've
11   got lawyers, they know the law and
12   they've been very strong about it. If
13   we could get them, we'd get them. We
14   can't.
15       And the notion that we
16   should be penalized because these
17   people are following the law and the
18   law doesn't allow it, the panel should
19   not hear what everyone admits is
20   critical evidence, is just silly.
21       MR. CHAFFETZ: May I
22   respond?

127

3/25/2002 Arbitration Hearing

1        THE UMPIRE: Anybody else?
2        Yes, please.
3        MR. CHAFFETZ: I'm sorry, I
4    don't remember your name.
5        MR. DASSENKO: Chris Byers.
6        MR. CHAFFETZ: I'm sorry,
7    Chris, because we met at John Pallat's
8    deposition. I think Chris made an
9    important point. This is arbitration.
10   It's not in court, and if we were in
11   court you could have compelled these
12   depositions, but I think he's drawing
13   the wrong conclusion.
14       The parties chose
15   arbitration and what comes along with
16   arbitration is the limitations that go
17   along with discovery in arbitration.
18   But that does not change the unfairness
19   of allowing a witness who is closely
20   identified with a party to testify
21   without there being a deposition. The
22   question of what you can compel is not

128

3/25/2002 Arbitration Hearing

1  before they come in and support the
2  party or you have no control over the
3  discovery process and you're imposing
4  an extremely asymmetrical and unfair
5  discovery procedure on the different
6  sides and we're being penalized for the
7  cooperation we provided on behalf of
8  Mr. Cackett.
9      MR. ROSENQUEST: The only
10 point that I would make is that I don't
11 see this as a matter of fault. I see
12 it as a matter of burden, and the
13 burden doesn't arise from anything more
14 than the desire to produce the witness
15 at hearing. If that is your desire, to
16 produce the witness at hearing in
17 advance of your cross, you've got an
18 obligation to produce that witness to
19 the other side for appropriate
20 discovery deposition.
21     Now the panel has certain
22 probable limitations arising out of

133

3/25/2002 Arbitration Hearing

1  federal law limits, but it retains the
2  ultimate power to maintain that rule
3  simply by declining to jump through
4  unnecessary -- you know, to jump
5  through hoops to do something which is
6  a poor and unfair substitute for doing
7  it the right way and that is simply to
8  decline to go through any of these
9  elaborate moves to Chicago, and if the
10 respondents wish to take upon
11 themselves the burden of making himself
12 available for deposition, they can do
13 so. If they decline to do so, if they
14 decline to do that, that's fine too.
15     MR. SCHOENBERG: May I
16 briefly respond?
17     MR. CHAFFETZ: I just
18 missed one point that I had meant to
19 cover and then it would seem logical
20 for us to finish our side first.
21     On the point about
22 arbitration being a choice and you give

134