3/25/2002 Arbitration Hearing

1  up certain things when you make that
2  choice and I referred to that earlier
3  in talking about the schedule because
4  giving up the right to appeal is
5  certainly as significant as giving up
6  the right to reach certain witnesses
7  who are beyond the subpoena power. It
8  also happens every day in arbitrations
9  and in court that important witnesses
10 are not available, they die, they take
11 the Fifth Amendment, they move beyond
12 the subpoena power of any panel or
13 court, and you just move forward and
14 you resolve the case based on the
15 evidence that you have. Let's just not
16 forget that they have John Pallat, he's
17 been working under some kind of
18 consulting agreement where he spent
19 more than 250 hours just working on
20 this case just in this calendar year.
21 It's not as if they're not going to
22 have someone to articulate their

135

3/25/2002 Arbitration Hearing

1  position and most or possibly all of
2  the pertinent facts that they need to
3  get in will come through him, and he
4  has submitted to deposition, and that's
5  perfectly appropriate.
6        In those circumstances, in
7  those circumstances where they have
8  such a key witness working closely with
9  him who I'm not going to say there's a
10 hundred percent overlap, but he's
11 largely cumulative of these other two
12 witnesses, under those circumstances,
13 the burden and unfairness of what
14 they're requiring or suggesting
15 out-weighs any marginal benefit of at
16 this date suspending the deposition
17 rule for their benefit.
18        MR. SCHOENBERG: May I?
19        THE UMPIRE: Yes, please.
20        MR. SCHOENBERG: This is
21 the first time we've heard any
22 suggestion on the part of any of the

136

3/25/2002 Arbitration Hearing

1   clearly the decisionmaker on this
2   within Aon, and he said, you know, he
3   was very interested in hearing what the
4   posture of the case was, but ultimately
5   and repeatedly he said no. He said
6   any -- and he phrased it to me as not
7   anything to do with Unicover or Roger
8   Smith or anybody else, it's Aon
9   doesn't, you know, gratuitously make
10  their employees available for
11  depositions that aren't compulsory.
12      MR. SCHOENBERG: From
13  Connecticut General's perspective, I
14  had a half a dozen phone calls with
15  Connecticut General business people, we
16  tried to find the right contact, we
17  finally found someone who called Aon
18  and all roads lead back to Shand
19  Stephens, which means all roads leads
20  back to a negative answer.
21      MR. COHEN: To no.
22      MR. SCHOENBERG: Certainly

165

3/25/2002 Arbitration Hearing

1   we made every effort.
2       THE UMPIRE: With respect
3   to Dunn, was his lawyer's basis for
4   limiting his deposition testimony to
5   one day the Illinois law or was it --
6       MR. WEISBURG: You'd have
7   to ask him, and we frankly encourage
8   you to call him, but my
9   understanding -- first of all, the
10  statute says three hours, so he's
11  clearly not adhering just to the
12  statute because he's offered more than
13  three hours.
14      MR. SCHIFFER: What he
15  actually said was I would only give you
16  three hours, but Mr. Dunn has agreed to
17  a full day.
18      MR. WEISBURG: Fine. And
19  my understanding is, it's the sum total
20  of all the circumstances. Tom Dunn,
21  just so there's no mistake about this,
22  Ms. Froelich I think misspoke, Tom Dunn

166

3/25/2002 Arbitration Hearing

1  presumption of three hours.
2  
3           MR. SCHIFFER: And that
4  case is limited to its terms.
5           MR. COHEN: I'm not saying
6  it doesn't. One has nothing to do with
7  the other.
8           MR. KANEFSKY: It seems to
9  me if we went to federal court and
10 anyplace would permit it it would be
11 Illinois.
12          MR. COHEN: That's what you
13 should have done months ago.
14          MR. KANEFSKY: The federal
15 court in Illinois. Which petitioners
16 are very familiar with from our
17 consolidation issue. We got a very pro
18 arbitration decision by the Seventh
19 Circuit.
20          THE UMPIRE: I guess one
21 question that we still have is
22 basically my initial question and that
23 is Section 7 of the Federal Arbitration

171

3/25/2002 Arbitration Hearing

1  Act says that the arbitrators can call
2  anyone to testify before them.
3  
4           MR. COHEN: That's correct.
5           THE UMPIRE: If we decided
6  that we wanted to have an evidentiary
7  hearing in Illinois in May, is there
8  some reason why we could not do that?
9           MR. CHAFFETZ: I think as a
10 legal matter you can't move this back
11 to Illinois without all the parties
12 consenting to that.
13          MR. COHEN: We obviously
14 disagree with that position.
15          THE UMPIRE: That's not my
16 question. My question is do you think
17 that order could be enforceable? For
18 example, we could fashion it as if it
19 were a bifurcated hearing, we wanted to
20 take the hearing testimony of Mr. Dunn
21 and Mr. Smith early in Illinois.
22          MR. SCHMIDT: For as long
23 as it takes.

172

3/25/2002 Arbitration Hearing

1   discovery depositions. You're talking
2   about hearing testimony. There is no
3   limit on that day to day.
4       THE UMPIRE: Then there's
5   nothing lost by fashioning that kind of
6   solution to this dilemma that we're all
7   in.
8       MR. CHAFFETZ: If you
9   overrule all of our --
10      THE UMPIRE: I realize if
11  we overrule all of our objections.
12      MR. COHEN: I think Aon
13  resisted the deposition subpoena
14  because they thought they had a
15  colorable argument under the law to do
16  that. I'm not sure they would feel
17  they had a colorable argument to seek
18  not to comply with an order if you were
19  to hold a hearing because Section 7 as
20  you said is clear. But we won't know
21  until we try.
22      MR. SCHMIDT: Could they

175

3/25/2002 Arbitration Hearing

1   themselves argue we don't have the
2   authority to move it to Illinois, they
3   being the Aon --
4       MR. SCHOENBERG: No, not
5   unless they were tipped off by somebody
6   that there's this issue and certainly
7   we're not going to tip them off to it.
8       MR. COHEN: It wouldn't
9   matter. They can't impose their view
10  on the parties' agreement assuming this
11  is an issue of the parties' agreement.
12      MR. KANEFSKY: I just
13  wanted to point out something that the
14  respondents had raised earlier. Yes,
15  when we were talking about how the
16  initial act of the paperwork, et
17  cetera, fell to Phoenix because Phoenix
18  had litigated against Aon earlier and
19  somehow that gave us an advantage,
20  although possibly it was a disadvantage
21  since we were adversaries, however, I
22  would point out that in that litigation

176

3/25/2002 Arbitration Hearing

1  there were one and maybe two
2  unequivocal direct orders from a state
3  judge in Illinois for Aon to produce
4  documents and they absolutely refused
5  until there was a contempt proceeding,
6  okay. So it's not clear to me at all.
7  In fact, I would say the opposite. I
8  haven't seen any interpretation of
9  federal or state law that would stop
10 Aon's attorneys from fighting this
11 knowing that time is on their side.
12     MR. SCHMIDT: One question
13 I forgot to ask before. Has Aon turned
14 over any documents at all? Has Smith
15 turned over any documents at all in
16 connection with this case?
17     MR. CHAFFETZ: I believe
18 that the documents we have from Aon
19 that have been shared from everyone in
20 this particular case are exclusively
21 the product of either the document
22 production we've had from Reliance in

177

3/25/2002 Arbitration Hearing

1  this case or, alternatively, that were
2  ultimately won in the court proceeding
3  that Mr. Kanefsky was talking about.
4     MR. SCHMIDT: So to make
5  the examination of Smith meaningful, we
6  would also have to get Aon to turn over
7  in advance the documents.
8     MR. COHEN: No, I don't
9  think --
10    MR. ROSENQUEST: Their
11 legal department has taken the position
12 that anything that would be responsive
13 to the subpoena was produced to Sun and
14 Phoenix as a result of court
15 proceedings in Illinois that concluded
16 early last year.
17    MR. SCHMIDT: Does that
18 include Smith's personal files?
19    MR. ROSENQUEST: They say
20 it does.
21    MR. SCHMIDT: Oh, they do.
22    MR. WEISBURG: Who knows

178

3/25/2002 Arbitration Hearing

1   whether we have a hundred percent. We
2   have numerous handwritten documents
3   that are Mr. Smith's.
4       MR. ROSENQUEST: They say
5   it does. It's just a matter of
6   credibility.
7       MR. COHEN: My
8   recollection, and you guys can correct
9   me if I'm wrong, at the very beginning
10  of this process they did produce some
11  documents voluntarily to certain
12  parties that were then produced to one
13  another.
14      MR. ROSENQUEST: There are
15  two such sets of documents, one from
16  Nicholson Leslie and another small
17  group from Chicago that came in very,
18  very early and they're largely just
19  slips, but the far more substantive
20  production was as a result of
21  litigation in Illinois.
22      MR. COHEN: But the short

179

3/25/2002 Arbitration Hearing

1   answer to your question, Dan, is there
2   are no document issues with Aon.
3       MR. ROSENQUEST: There
4   aren't any that they will admit to,
5   let's put it that way.
6       THE UMPIRE: Wright and
7   Ekwall were employees of Phoenix,
8   right?
9       MR. KANEFSKY: Yes.
10      THE UMPIRE: At one point I
11  noted that Sun was the reinsurer of
12  Syndicate 957 and Cackett from '92
13  through '96 I think; is that right?
14      MR. CRAFFEITZ: I'm not sure
15  about the years, but in principle, yes.
16      MR. COHEN: '96, right.
17      THE UMPIRE: Was Phoenix
18  also a reinsurer of 957?
19      MR. COHEN: Yes.
20      THE UMPIRE: Okay. And
21  Cackett.
22      MR. COHEN: Yes.

180

3/25/2002 Arbitration Hearing

1   suggestions to change it in order to
2   accommodate this what will be an
3   unorthodox procedure. But if you'd
4   like to take a few minutes and discuss
5   it or if you'd like to answer right
6   away, that's fine too.
7       MR. ROSENQUEST: If we can
8   have a few minutes.
9       THE UMPIRE: Let's go off
10  the record.
11      (A recess was taken.)
12      THE UMPIRE: On the record,
13  please.
14      MR. CHAFFETZ: Obviously
15  we're surprised and disappointed by
16  that ruling which we see as just a
17  significant change in the groundrules
18  at the end of the day because clearly
19  we could have done this, as Cliff said,
20  we could have done this without
21  depositions and that would have been
22  vastly less expensive, and if we had

185

3/25/2002 Arbitration Hearing

1   known that people the likes of Tom Dunn
2   and Roger Smith would be heard by the
3   panel without depositions, then why
4   should we have gone through all of the
5   trouble and effort that was made to
6   present the witnesses that we presented
7   for deposition. It just seems very
8   unfair and unfortunate.
9       For that reason, and also
10  because we don't think that you have
11  the authority, your jurisdiction to
12  conduct a hearing in Illinois can only
13  be by consent of all the parties, at
14  this time, we're reserving on the
15  question of whether we consent to that.
16  We're not going to obstruct it and
17  we're going to go along with whatever
18  the panel chooses to do or rules, but
19  in other words, and we won't, somebody
20  said somebody might leak to Aon certain
21  objections that can be made, we won't
22  do anything to prevent this from

186

3/25/2002 Arbitration Hearing

1  occurring along with whatever
2  groundrules the panel imposes, but I
3  just want to be clear in cooperating
4  we're not waiving the legal objection
5  we have to these proceedings going
6  forward.
7       Now we do have some
8  suggestions that we think could at
9  least reduce the prejudice involved in
10 proceeding as the panel has ruled.
11      First of all, if
12 respondents have no control and these
13 witnesses are veritable strangers to
14 them, we think the panel should impose
15 a rule requiring no contact with those
16 witnesses or their attorneys until the
17 completion of this exercise.
18      Secondly, we think that
19 there should be an order of
20 examination, and examination -- and one
21 other rule to bring this as close as
22 possible to what would have occurred

187

3/25/2002 Arbitration Hearing

1  had these witnesses cooperated with
2  depositions. And so what we
3  contemplate is that initially we would
4  have a period of discovery -- we would
5  open the examination and conduct as
6  best we can a deposition type
7  examination and for that portion of
8  the -- we picture that each witness
9  would be done in one sitting of
10 continuous days until completed because
11 we assume that's the most likely to be
12 upheld by the courts as within the
13 panel's authority.
14      But for each witness we
15 would ask that we be allowed to conduct
16 something in the nature of a discovery
17 examination, then respondents would put
18 on that witness's direct testimony and
19 then we would be entitled to cross
20 examine, it would be like recross, we
21 would then follow and they could
22 rehabilitate and so forth, but that the

188

3/25/2002 Arbitration Hearing

1   Procedurally we'd like to
2  discuss a little bit how to go about
3  doing this. Obviously we're going to
4  issue an order that the hearing dates
5  are changed in order to accommodate
6  testimony from those two men. That
7  means that somebody's going to have to
8  prepare a subpoena. I presume that you
9  would, the respondents will be prepared
10  to do that.
11        MR. COHEN: Okay.
12        THE UMPIRE: If it is
13  opposed in federal court, any thought
14  on who would defend the subpoena?
15        MR. SCHOENBERG: Who would
16  seek to enforce it?
17        THE UMPIRE: Yes.
18        MR. SCHOENBERG: We would
19  do that.
20        MR. BYERS: It feels like
21  an issue that both sides should be
22  joining in so that the court is

235

3/25/2002 Arbitration Hearing

1  convinced this is something very
2  important to both sides.
3        MR. SCHOENBERG: I
4  completely agree with that and I agree
5  maybe even the costs should be shared,
6  but as a practical matter somebody
7  should take the laboring oar. Is that
8  what you're referring to, Mr. Tobin?
9        THE UMPIRE: Yes, that's
10  what I'm referring to. And of course
11  the panel would be available to support
12  anything necessary.
13        MR. DASSENKO: The panel
14  could give affidavits on the importance
15  of these witnesses.
16        MR. SCHOENBERG: That would
17  be very helpful.
18        THE UMPIRE: I think the
19  ideal would be petitioners and
20  respondents to cooperate in enforcing
21  the subpoena.
22        MR. CHAFFETZ: We won't do

236

3/25/2002 Arbitration Hearing

1  anything to impede it, but they're the
2  proponents of the witnesses and
3  therefore, we are not, I don't think,
4  would be taking any responsibility to
5  join in pursuing it.
6     Also, I think it's a
7  caution that if the dates of
8  availability are not continuous it will
9  be a defense that you can't have -- I
10 would expect to hear that you have to
11 do this in one shot, one continuous
12 shot per witness, that you can't have
13 multiple hearings for the same witness.
14 I don't know for sure, but that's one
15 of the things we thought about as one
16 of the practical obstacles for that. I
17 think we should be alert to that
18 possibility.
19    MR. SCHMIDT: I'm trying to
20 understand that. You're saying if the
21 panel said we're meeting Monday,
22 Tuesday, Wednesday, Thursday and

237

3/25/2002 Arbitration Hearing

1  continuing Monday, Tuesday, Wednesday,
2  the following week, that you can't do
3  that?
4     MR. CHAFFETZ: I've seen
5  Aon take more aggressive positions than
6  that. I mean I think if it's what you
7  said it's pretty continuous, but if
8  we're going to do two days this week
9  and three days two weeks after that you
10 might see opposition to that. I just
11 think it's something to be prepared
12 for.
13    MR. SCHMIDT: We can't
14 speak to opposition, but I'll tell you
15 I've seen so many different hearings
16 that are not five days a week
17 continuous weeks or continuous weeks.
18    MR. CHAFFETZ: Hopefully
19 it's not an issue, maybe I shouldn't
20 have mentioned it. On the first
21 principle, we appreciate the no
22 contact/no privilege rule but we should

238

3/25/2002 Arbitration Hearing

```
 1   witnesses that you've conceded are
 2   important.
 3            MR. SCHMIDT: But we've
 4   also said right now anyway our target
 5   end date is August 2nd and that we
 6   retain the right the panel has not to
 7   hear witnesses who do not respond
 8   appropriately to --
 9            MR. DASSENKO: That's the
10   signal.
11            MR. CHAFFETZ: Perhaps we
12   could all agree then just as we've
13   agreed not to do anything that would
14   impede the chances of accomplishing
15   this, even though we don't support it,
16   that for purposes of all communications
17   outside of this room and with the
18   people we're trying to bring to the
19   hearing, that we for all outward
20   communications we're saying that this
21   hearing concludes on August 2nd.
22            MR. COHEN: We're not going
23
```

241

3/25/2002 Arbitration Hearing

```
 1   to make misrepresentations to people
 2   about when the hearing is going to
 3   conclude. Witnesses are going to be
 4   under subpoena to appear on specific
 5   dates. When the rest of the hearing is
 6   is irrelevant to complying with those
 7   subpoenas.
 8            MR. BYERS: I think the
 9   point Mr. Dassenko made is in response
10   to the point you just made. If we do
11   that they'll string it out to August
12   2nd and we're beyond that.
13            THE UMPIRE: I think we
14   made it clear earlier today that August
15   2nd is the end date for this hearing.
16            MR. CHAFFETZ: Okay.
17            THE UMPIRE: You folks have
18   got to come up with some plan to get
19   your cases presented in the way that
20   reaches August 2nd and not beyond
21   because I don't plan on having any
22   hearing after August 2nd.
23
```

242

3/25/2002 Arbitration Hearing

1
2           Just to bring one other
3  thing up, I would like to understand
4  that you will cooperate in the event
5  that, for example, an affidavit from
6  counsel for the petitioners is
7  necessary before a court or what have
8  you. Maybe you can think of different
9  examples, but I'd like to know that
10 you're cooperating or that you
11 understand that we expect you to
12 cooperate even though you may not be
13 the active legal counsel pushing for
14 enforcement of the subpoena.
15          MR. CHAFFETZ: We still
16 haven't consented to this, and this is
17 something we need to reflect on
18 further. My statement was we would do
19 nothing to impede this going forward or
20 we would not try to interpose any
21 technicality against it going forward,
22 so I think the likelihood is we
23 would -- it's so hypothetical, I don't

3/25/2002 Arbitration Hearing

1  know if that could really occur. We
2  will not do anything to instigate the
3  failure of this procedure.
4          MR. SCHOENBERG: Actually
5  just one comment on that. I think that
6  as a practical matter, that not joining
7  in the enforcement proceedings is
8  impeding it because I think the panel
9  recognizes that the likelihood of it
10 being enforced will be enhanced if the
11 panel and all parties tell the court we
12 think it's important and necessary.
13         MR. COHEN: And tell Aon.
14         MR. SCHOENBERG: With a
15 full reservation of their rights to say
16 despite the fact that they're joining
17 in it they don't really mean it in
18 terms of any consequence in this
19 arbitration, but it seems to me that's
20 a very small thing that we're
21 requesting of them which is to join in
22 this request to make sure that the

3/25/2002 Arbitration Hearing

1   panel hears testimony from witnesses
2   that they've conceded are critical.
3       MR. ROSENQUEST: First of
4   all, I think any insistence that any of
5   these parties join in a piece of
6   litigation in a federal court in
7   Illinois is likely beyond the power of
8   the panel to order. More importantly,
9   this is very, very premature. I think
10  the likelihood that a hearing subpoena
11  will be -- will require judicial
12  enforcement is certainly less than the
13  likelihood that a deposition subpoena
14  would have required that kind of work.
15  It's a very troubling issue to confront
16  being ordered to participate in
17  litigation, there's no need to address
18  it now when we don't know that
19  litigation will be required. We're
20  just going to have to take the legal
21  position with our clients if and when
22  that litigation needs to be filed.

245

3/25/2002 Arbitration Hearing

1       MR. COHEN: I'm sorry, I
2   would disagree with that. I don't
3   think it's premature at all. I think
4   from Aon's perspective in terms of
5   whether they're going to fight and if
6   so how hard, if they see that both
7   parties have joined in the request to
8   the panel to issue the hearing
9   subpoena, it might affect their
10  psychology and how they react to it.
11      MR. CHAFFETZ: I don't
12  understand. We oppose this, we think
13  it's wrong, we have to abide by the
14  panel's ruling, but if it turns out
15  that this can only happen if we join in
16  seeking these witnesses to come here
17  and we've told you all the reasons why
18  at this stage we don't choose to do
19  that, we certainly can't resolve that
20  today. We have to confer with our
21  clients, we have to do some research.
22  You're asking us, you'd basically be

246

3/25/2002 Arbitration Hearing

1   asking us to waive a legal right. It
2   turns out if that's true we didn't even
3   have to come to you because we have a
4   legal right not to participate in
5   procuring these witness's attendance
6   against our will. It's not different
7   than Mr. Dunn and Mr. Smith relying on
8   their legal right not to be deposed.
9       MR. DASSENKO: I do think
10  it's very interesting that you would
11  think that critical witnesses, you
12  wouldn't actively support the panel
13  hearing critical witnesses.
14      I fully understand that the
15  procedures and your inability to depose
16  these witnesses are a very unhappy set
17  of circumstances. The panel's
18  extremely disappointed with that
19  particular situation, as are you.
20      Having confronted that, the
21  panel still wants to hear witnesses
22  that you have determined are critical

3/25/2002 Arbitration Hearing

1   and the other side has determined are
2   critical.
3       Now, if you would oppose in
4   any way or if your clients are in a
5   position of not assisting in the
6   procurement of these witnesses that
7   would be a very disappointing turn of
8   events.
9       MR. CHAFFETZ: We said we
10  weren't assisting since I think it was
11  December 10th. Cia is not here now,
12  but I think that's correct.
13      MR. ROSENQUIST: That's
14  correct.
15      MR. CHAFFETZ: And it's no
16  surprise.
17      MR. COHEN: But yet you're
18  seeking to impose all kinds of
19  restrictions and limitations on our
20  getting the witnesses that we think are
21  critical.
22      MR. CHAFFETZ: The law is

3/25/2002 Arbitration Hearing

249

1   what the law is. I'd prefer not to
2   dispute this here. We will do nothing
3   active to prevent this from going
4   forward and we'll cooperate in
5   scheduling and so forth, but if it
6   turns out that we have a legal right to
7   withhold our support from litigation,
8   then we're not prepared to waive this
9   on a hypothetical at this stage in this
10  hearing.
11          And we've certainly told
12  you all the reasons why we think doing
13  this at this stage -- we appreciate the
14  panel's effort to make this more fair,
15  we do appreciate that, but it's only
16  somewhat ameliorative, it doesn't
17  address the situation or the horrific
18  logistical burdens. We haven't
19  actually talked about the actual
20  schedule. It's not going to be easy to
21  do.
22          MR. DASSENKO: It's not a

3/25/2002 Arbitration Hearing

250

1   happy schedule for the panel either.
2   We're trying to hear witnesses that
3   we've deemed important and it just
4   would be a very, very sad turn of
5   events that because they can't be
6   deposed and there's some sort of a
7   federal technicality, you know, in
8   federal courts or the arbitration act
9   or Illinois circuit, whatever, it would
10  be a very sad twist of events.
11          THE UMPIRE: Let me ask a
12  question. Who has standing under the
13  circumstances to enforce a subpoena,
14  the individual parties?
15          MR. SCHOENBERG: We all do.
16          THE UMPIRE: Or the panel?
17          MR. SCHIFFER: The parties
18  that issue a subpoena.
19          MR. COHEN: The panel
20  issues the subpoena.
21          MR. SCHOENBERG: The panel
22  and all the parties have standing