**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT** FILED

2003 DEC -4 P 1: 34

-------------------------------------------------------------

PHOENIX LIFE INSURANCE COMPANY : CIVIL ACTION NO.
and GENERAL & COLOGNE LIFE RE : 3:03CV0907 (WWE)
OF AMERICA, :
:
:
Plaintiffs, :
:
v. :
:
AON RE, INC. : December 4, 2003
:
:
Defendant. :

-------------------------------------------------------------

### DEFENDANT AON RE, INC.'S MOTION TO FILE ADDITIONAL BRIEF AND SUR–REBUTTAL IN SUPPORT OF ITS MOTION TO STAY PROCEEDINGS

#### INTRODUCTION

Aon Re does not oppose Phoenix and Cologne's motion to file a sur–reply, but if the Court grants their motion, Aon Re requests that its sur–rebuttal be considered as well. Therefore, Aon Re moves this Court for permission to file this sur–rebuttal to address the arguments made by Phoenix and Cologne in its sur–reply.

Phoenix and Cologne contend that Aon Re cited to the New Jersey Superior Court's issuance of a stay in the *ReliaStar* action as "controlling precedent." But that is not correct. The New Jersey decision was cited because it confirms what this Court previously stated: It makes no sense to simultaneously address issues here that will ultimately be addressed in the arbitration. Even if all the issues are not addressed in the arbitration, some certainly will be, thereby simplifying the task here. That another court came to the same conclusion on essentially the same facts provides *persuasive* authority that this Court's preliminary ruling was correct.

Notably, in its sur–reply, Phoenix and Cologne continue to focus on the *claims* asserted rather than the *factual issue*s. The core factual issues, however, are really quite simple: Did Unicover underwrite excessive amounts of underpriced reinsurance, thereby putting the retrocessional coverage in jeopardy? And was the nature of the risk and the uncertainty of retrocessional protection communicated to the Pool members? Phoenix and Cologne's *claims* against Aon Re as retrocessional broker or joint–venture partner are merely variations of contract theories based upon the same factual dispute. They are no different than those facts alleged against Unicover, which is the conclusion the *ReliaStar* court reached when it stayed that action: "This Court does not read the complaint as asserting any claims against Aon [Re] . . . that are separate from and independent of the *wrongs alleged* to have been committed by Unicover. The *operative facts* out of which such claims arise involve and are tied to the wrongdoing alleged against Unicover."[1] Because, like the *ReliaStar* action, the operative facts are no different here than those to be decided in the Unicover arbitration, this Court should confirm its preliminary ruling and issue a stay pending the outcome of the arbitration.

## ARGUMENT

## I.    PHOENIX AND COLOGNE'S SELECTIVE CITATIONS TO THE NEW JERSEY SUPERIOR COURT'S RULING ARE MISLEADING.

Phoenix and Cologne contend that the New Jersey Superior Court granted the motion to stay "because it found that ReliaStar failed to articulate how its *claims* were independent from those" asserted in the Unicover arbitration.[2] But the focus of the court's attention at the hearing and in its decision was on the *factual issues* to be decided. At the hearing, the court specifically asked ReliaStar's counsel to identify the "factual basis" of its claims against Aon Re if the

---

[1]   Ex. 1 at 29 (emphasis added).

[2]   Phoenix Sur–Reply at 3 (emphasis added).

arbitration panel concludes that Unicover "completely complied with the agreement and did nothing wrong" and "that ReliaStar got all the information they were entitled to."[3] The court's questioning on this issue extends over fifteen pages of the transcript, and in the end, the court found that ReliaStar was unable to articulate what those factual issues would be:[4]

> This Court does not read the complaint as asserting any claims against Aon [Re] . . . that are separate from and independent of the wrongs alleged to have been committed by Unicover. The *operative facts* out of which such claims arise involve and are tied to the wrongdoing alleged against Unicover. . . . If in the arbitration Unicover is exonerated there probably would be no viable claims against the defendants [including Aon Re] named herein.[5]

The fact that ReliaStar chose not to assert a fraud claim against Unicover in the arbitration did not change the result because, as the court noted, selectively interchanging "claims" in one proceeding as opposed to the other is little more than an artful attempt by ReliaStar to "circumvent its arbitration obligation."[6] And because other Pool members asserted such claims in the Unicover arbitration, the court concluded that the "underlying factual basis of those claims will be dealt with in the arbitration."[7] Phoenix and Cologne's characterization that the New Jersey court focused on ReliaStar's *claims* rather than the issues is therefore misplaced.[8]

---

[3]  Ex. 2 at 79, 81, 87.

[4]  *See* Ex. 1 at 29.

[5]  *Id* (emphasis added).

[6]  *Id.*

[7]  *Id.* at 30.

[8]  *See also id.* at 25 ("the primary focus [in issuing a stay] should be on factual issues . . . otherwise a party could craft a complaint so that the legal issues are different than those at issue in the arbitration").

## II.    THE ISSUES TO BE DECIDED IN THE UNICOVER ARBITRATION ARE INTERTWINED WITH THE ISSUES TO BE DECIDED HERE.

Like ReliaStar, Phoenix and Cologne go to extraordinary lengths to avoid arbitrating its dispute with Unicover before proceeding with its claims against Aon Re here. They too attempt to do this by continuing to focus on the *claims* rather than the factual issues to be decided. Not once do Phoenix and Cologne address the factual contention that underpins their whole case against Aon Re: That, allegedly unbeknownst to Phoenix and Cologne, too much risk was placed for too little premium, thereby jeopardizing the Pool's retrocessional coverage. This, Phoenix and Cologne admit, is the focus of the arbitration against Unicover.[9]

The allegations that Unicover (and now Aon Re) concealed material information about the volume of business underwritten for so little premium is no different than the allegations made by Phoenix and Cologne in the Sun Life Arbitration. Both Phoenix and Cologne alleged that Unicover defrauded them by misrepresenting and failing to disclose the true nature and volume of Unicover's business.[10] In fact, although Pool members themselves, Cologne argued that the "pool members who knew about and acquiesced in [Unicover's] intentional conduct [and unconscionable behavior] should not profit from Unicover's actions, but should bear the financial cost of the risks they so readily allowed Unicover to write on their behalf."[11]

Moreover, the Court need only look to essentially three paragraphs in Phoenix and Cologne's complaint to reach the conclusion that not much has changed — the factual issues are the same since Phoenix and Cologne terminated the retrocessional agreements in 1999:

---

[9]    *See* Phoenix Sur–Reply at 6.

[10]    Exs. 3–4.

[11]    Ex. 4 at 3.

4

- "Unicover's practice of underwriting a large volume of underpriced — and unprofitable — business was not disclosed to either Phoenix or Cologne as Pool members or to the Retrocessionaires."[12]

- "Aon [Re] as the Pool members' retrocessional broker *and* Unicover's joint venture partner . . . knew of Unicover's plans and its efforts to cause an unauthorized premium surge" but it failed to disclose this information.[13]

- "Aon [Re] was aware no later than August of 1998 that the Pool members' retrocessional protection under the December Whole Account was in jeopardy" but it failed to disclose this information.[14]

And although Phoenix and Cologne admit that these are the factual issues to be decided in their claim against Aon Re as retrocessional broker,[15] they fail to explain how these factual issues are any different than those asserted against Aon Re as Unicover's supposed joint–venture partner. Nor can they. The complaint itself establishes there is no distinction between the factual issues to be decided as retrocessional broker or Pool manager.[16]

Because Phoenix and Cologne have failed to establish any reason why this case should go forward during the pendency of the related Unicover arbitration, this Court should confirm its October 8 preliminary ruling and grant Aon Re's motion to stay.

---

[12] Phoenix Compl. ¶ 43.

[13] *Id.* ¶ 52 (emphasis added).

[14] *Id.* ¶ 53.

[15] Phoenix Sur–Reply at 5.

[16] *Compare* Phoenix Compl. ¶ 61 *with* ¶ 71 (claiming that Aon Re breached its duties as retrocessional *and* Pool broker based upon the same misrepresentations and omissions).

**CONCLUSION**

Defendant Aon Re, Inc. therefore respectfully requests that the Court grant its motion to stay the proceedings in its entirety.

Dated:  December 4, 2003.                By: _____

Timothy A. Diemand (CT 18075)
WIGGIN & DANA LLP
One Century Tower
265 Church Street
New Haven, Connecticut 06508
Telephone: (203) 498–4400
Facsimile: (203) 782–2889
tdiemand@wiggin.com

Shand S. Stephens (CT 14705)
AON LAW DIVISION
199 Fremont Street
San Francisco, California 94105
Telephone: (415) 486–6980
Facsimile: (415) 486–7018

Dan K. Webb (CT 25036)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 558–5600
Facsimile: (312) 558–5700

Alan L. Kildow (CT 24177)
Sonya R. Braunschweig (CT 25037)
OPPENHEIMER WOLFF & DONNELLY LLP
3300 Plaza VII Building
45 South Seventh Street
Minneapolis, Minnesota 55402
Telephone: (612) 607–7000
Facsimile: (612) 607–7100

*Attorneys for Defendant Aon Re, Inc.*

6

## **CERTIFICATION**

This is to certify that a copy of the foregoing Defendant Aon Re, Inc.'s Motion to File

Additional Brief and Sur-Rebuttal in Support of its Motion to Stay Proceedings was sent by

overnight courier this 4th day of December 2003 to:


Janet M. Helmke, Esq.
Robert D. Laurie, Esq.
Edwards & Angell, LLP
90 State House Square
Hartford, CT  06103-3702

_____
Timothy A. Diemand

<pre>
                                    SUPERIOR COURT OF NEW JERSEY
                                    LAW DIVISION, CIVIL PART
                                    MIDDLESEX COUNTY
                                    DOCKET NO. MID-L-3916-03
 1                                  A.D.#_____

 2   RELIASTAR LIFE INSURANCE CO., )
                                   )
 3                   Plaintiff,    )
                                   )
 4          Vs.                    )        TRANSCRIPT OF THE
                                   )        DECISION OF THE
 5                                 )     HONORABLE ANN G. MCCORMICK
                                   )
 6   AON RE, INC., ET AL.,         )
                                   )
 7                   Defendants.   )
                                   )
 8

 9                       Place:  Middlesex County Courthouse
                                 1 JFK Square
10                               New Brunswick, New Jersey 08903

11                        Date:  November 7, 2003

12
     BEFORE:
13
         HONORABLE ANN G. MCCORMICK, J.S.C.
14

15   TRANSCRIPT ORDERED BY:

16       CRAIG L. STEINFELD, ESQ. (Riker Danzig Scherer Hyland &
         Dicker)
17
     APPEARANCES:
18

19       THERESA L. MOORE, ESQ. (McCarter & English)
         Attorney for Plaintiff, ReliaStar Life Insurance Co.
20
         CRAIG L. STEINFELD, ESQ. (Riker Danzig Scherer Hyland &
21       Perretti)
         Attorney for Defendants, John E. Pallat and Robert
22       J. Wojtowicz

23       JAMES S. RICHTER, ESQ. (Winston & Strawn)
24       Attorney for Defendants, Aon Re, Inc. and Roger Smith

25
</pre>

The Court - Decision                          25

1    within a reasonable time and that such delay that may
2    occur will not cause undue hardship to the party."
3    That is at 760 of the Cosmotech case actually quoting
4    American Line -- American Shipping Line vs. Mason
5    Shipping Industries, 885 Fed. Supp. 499 at page 502,
6    Southern District of New York 1995.
7           I am not convinced that the standard to
8    assess whether to grant a discretionary stay is quite
9    so onerous.  See American Home Assurance Co. vs. Nico
10   Concrete Construction Co. (phonetic), 629 F Second 961
11   at page 964, Fourth Circuit, 1980.  In that case the
12   stay was granted because common questions of fact would
13   be resolved in the arbitration.  Also see Crawford vs.
14   West Jersey Health Systems, 847 F Supp. 1232 at page
15   1243, District of New Jersey 1994.  And this is a quote
16   the case states, "Where significant overlap exists
17   between the parties and issues, courts generally stay
18   the entire action pending arbitration."
19          In any event, even following the Cosmotech
20   standard the primary focus should be on factual issues
21   in determining whether there are common issues,
22   otherwise a party could craft a complaint so that the
23   legal issues are different than those at issue in the
24   arbitration.  In order to determine whether there are
25   common factual issues and whether the arbitration will

The Court - Decision                            29

1    reluctantly conceded that if Uni -- if Unicover was

2    found not to have engaged in any wrongdoing ReliaStar

3    would have no claim against the Unicover principals.

4           ReliaStar, however, argued that there still

5    would be a claim against the brokers, Aon, its employee

6    Smith and Radnor.  Plaintiff was not able to articulate

7    to the satisfaction of this Court, however, what those

8    -- what those causes of action would be.

9           This Court does not read the complaint as

10   asserting any claims against Aon, its employee Smith or

11   Radnor that are separate from and independent of the

12   wrongs alleged to have been committed by Unicover.  The

13   operative facts out of which such claims arise involve

14   and are tied to the wrongdoing alleged against

15   Unicover.  This Court, therefore, answers both of the

16   preliminary questions regarding the issuance of a

17   discretionary stay in the affirmative.  If in the

18   arbitration Unicover is exonerated there probably would

19   be no viable claims against the defendants named

20   herein.  The fact that ReliaStar has affirmatively

21   chosen not to assert fraud based claims against

22   Unicover in the arbitration does not change that

23   result.  A party cannot be allowed to so easily

24   circumvent its arbitration obligation.  Moreover, the

25   other pool members have asserted such claims in the

The Court - Decision                                    30

1    arbitration.  So the underlying factual basis of those

2    claims will be dealt with in the arbitration.

3    Moreover, breach of fiduciary duty claims are asserted

4    by ReliaStar in the arbitration.

5              The Court now must determine whether the non-

6    arbitrating parties will hinder the arbitration,

7    whether the arbitration will be resolved in a

8    reasonable period of time and whether the stay will

9    cause undue hardship to any party.

10             Whether the non-arbitrating parties will

11   hinder the arbitration remains to be seen.  Plaintiff

12   raises the discovery difficulty presented by many of

13   these same parties during the retro-sessional

14   arbitration.  These parties deny that they presented

15   impediments to discovery or of the presentation of the

16   proofs in the arbitration.  Because this Court intends

17   to monitor the arbitration any impediments presented by

18   the non-arbitrating parties certainly would have to be

19   considered in any determination as to a continuation of

20   a stay.

21             As to whether the arbitration will be

22   resolved in a reasonable time -- period of time is as

23   might be surmised sub -- subject to widely divergent

24   views.  Defendants believe that the arbitration will be

25   concluded relatively quickly.  ReliaStar believes that

*EXH 2*

```
 1                                    SUPERIOR COURT OF NEW JERSEY
                                      MIDDLESEX COUNTY, CIVIL PART
 2                                    DOCKET NO. MID-L-3916-03
                                      APP. DIV. NO._____
 3

 4   RELIASTAR LIFE INSURANCE CO.,    )
                                      )
 5                      Plaintiff,    )
                                      )       TRANSCRIPT OF PROCEEDINGS
 6              vs.                    )
                                      )
 7   AON RE, INC., et al.,            )
                                      )
 8                      Defendant.    )

 9

10                                    Place:  Middlesex County Court
                                              New Brunswick, N.J.
11
                                      Date:   October 24, 2003
12
     BEFORE:
13
        THE HONORABLE ANN G. MC CORMICK, J.S.C.
14
     TRANSCRIPT ORDERED BY:
15
        TERESA L. MOORE, ESQ. (McCarter & English)
16
     APPEARANCES:
17
        TERESA L. MOORE, ESQ. (McCarter & English)
18         -and-
        JOHN BEERBOWER, ESQ.
19      Attorneys for Plaintiff.

20

21

22                                    TRANSCRIBER LOUISE GARGANO
                                      G & L TRANSCRIPTION OF NJ
23                                    40 Evans Place
                                      Pompton Plains, New Jersey 07444
24
                                      973-616-1051
25
                                      Audio Recorded By:  N/A
```

Colloquy

1   that we did --

2           THE COURT:  I understand that.

3           MR. BEERBOWER:  Okay.

4           THE COURT:  I said that.

5           MR. BEERBOWER:  And -- and you know, I -- I

6   -- I expect --

7           THE COURT:  I understand that.

8           MR. BEERBOWER:  -- the amount of --

9           THE COURT:  With the nature of the claims and

10  without me even reading Lincoln and Phoenix and all the

11  other claims that everybody is asserting in this

12  arbitration, you adding some fraud-based claims isn't

13  going to make a hill of beans difference.

14          Why didn't you do that?

15          MR. BEERBOWER:  Your Honor, it -- well, it

16  does make a difference because you see --

17          THE COURT:  Okay.  Let me --

18          MR. BEERBOWER:  -- I -- I could --

19          THE COURT:  -- let me ask --

20          MR. BEERBOWER:  -- I could tell you how much

21  money we spent in the last --

22          THE COURT:  -- let me --

23          MR. BEERBOWER:  -- arbitration.

24          THE COURT:  -- let me your --

25          MR. BEERBOWER:  The -- the simple --

Colloquy

1          THE COURT:  What -- what you're telling me is

2    it was a money consideration.  But let me ask you

3    another question so that I understand this.

4          MR. BEERBOWER:  Yes.

5          THE COURT:  You go through this arbitration

6    and the ultimate decision of the arbitrators is

7    Unicover completely complied with the agreement and did

8    nothing wrong.  Every act that it took was one hundred

9    percent compliant with the agreement.  Hypothetically,

10   let's just say that is the result.  Okay?  All right?

11         MR. BEERBOWER:  Well, I'm -- I'm -- yes.

12         THE COURT:  It's a hypothetical.

13         MR. BEERBOWER:  Right.  And -- and -- and

14   you're -- you're assuming that we've litigated those

15   issues.

16         THE COURT:  Yes.

17         MR. BEERBOWER:  Because, you know, the fact

18   that Phoenix or somebody else litigates it --

19         THE COURT:  No.  You're in the arbitration.

20         MR. BEERBOWER:  -- is -- is utterly --

21         THE COURT:  You're in there.

22         MR. BEERBOWER:  Well, no, Your Honor.

23         THE COURT:  There's discovery.  There's a

24   hearing.  And I'm asking you to hypothetically assume

25   that the decision -- is it a panel or there's -- or is

Colloquy

1    there one?

2              MR. BEERBOWER:  Three.

3              THE COURT:  Three.  That the panel decides:

4    I've heard all the evidence.  I've heard all the

5    witnesses.  I've looked at everything.  I've spent four

6    months doing this.  And we as a panel conclude that

7    Unicover complied with the agreement.  They took no

8    action outside the agreement and that they did

9    absolutely nothing wrong in connection with their

10   undertaking under the agreement.  Assume that is the

11   decision.

12             MR. BEERBOWER:  Right.

13             THE COURT:  Okay.

14             MR. BEERBOWER:  Yes.

15             THE COURT:  Do you have a claim against

16   Pallat?

17             MR. BEERBOWER:  Yes, I think ——

18             THE COURT:  Oh.

19             MR. BEERBOWER:  —— we do.

20             THE COURT:  What's the claim?

21             MR. BEERBOWER:  Well, if I could start, we

22   have a claim against Aon.  We have a claim ——

23             THE COURT:  No.

24             MR. BEERBOWER:  —— against Ratner.

25             THE COURT:  No.  Answer —— please answer my

Colloquy

1    question.

2            MR. BEERBOWER:  Yes.

3            THE COURT:  Do you have -- I'm going to take

4    each one alone.  Do you have a claim against Pallat?

5            MR. BEERBOWER:  I -- we still have a claim

6    that Pallat conspired against Ratner in the breach of

7    their duties, which are not under the pool management

8    agreement and not --

9            THE COURT:  Okay.

10           MR. BEERBOWER:  -- in arbitration.

11           THE COURT:  If Unicover did everything right,

12   they did nothing wrong, nothing, what is the factual

13   basis of your claim against Aon and Ratner?

14           MR. BEERBOWER:  Aon and Ratner were acting as

15   retrocessional brokers for the pool members.  They were

16   our agents not under the pool management agreement but

17   -- but acting as our agents and the --

18           THE COURT:  Was that not in connection with

19   Unicover, however?

20           MR. BEERBOWER:  Oh, yes.

21           THE COURT:  Okay.

22           MR. BEERBOWER:  Yes.

23           THE COURT:  So the arbitration's already

24   found that Unicover did nothing wrong.  So what I need

25   -- what I really need to understand is assuming that

Colloquy

1    involved in that?

2            MR. BEERBOWER:  Yes.

3            THE COURT:  Okay.

4            Is that not an issue in this arbitration?

5            MR. BEERBOWER:  I -- I don't know what's at

6    issue in this arbitration.  I mean, you've -- you've

7    read --

8            THE COURT:  In the --

9            MR. BEERBOWER:  -- Mr. Weisberg's --

10           THE COURT:  -- in the arbitration --

11           MR. BEERBOWER:  -- laundry list of claims.

12           THE COURT:  -- in the arbitration are you

13   going to allege as part of your allegation of breach of

14   fiduciary duty that Unicover breached its fiduciary

15   duty because it did not tell you that the

16   retrocessioner insurers were getting antsy and wanted

17   to pull out?  Is that part of your -- is -- is that

18   part of the factual basis of your claims?

19           MR. BEERBOWER:  Well, I -- it -- it clearly

20   could be, I believe.

21           THE COURT:  Okay.

22           MR. BEERBOWER:  If I understood --

23           THE COURT:  Is part of --

24           MR. BEERBOWER:  -- what you said.

25           THE COURT:  -- the factual basis of your